Filed 5/29/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JANICE DOE et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA CLARA COUNTY, <br><br> Respondent, <br><br> THE FIRST BAPTIST CHURCH OF SAN JOSE, <br><br> Real Party in Interest. | No. H040674 <br> (Santa Clara <br> Super. Ct. No. 113CV251524) |

Petitioners Janice Doe and John Doe (parents) seek a writ of mandamus or prohibition directing respondent Superior Court of Santa Clara County to enter a new order overruling a demurrer to the seventh and eighth causes of action of parents' first amended complaint (Complaint). Those causes of action allege that real party in interest First Baptist Church of San Jose, doing business as Camp on the Hill (Camp), fraudulently concealed information from parents about a Camp employee's suspected molestation of their daughter Jane Doe (minor) at its summer camp. We will grant the petition because under the facts of this case disclosure of suspected molestation by a Camp employee was within the scope of Camp's duty to minor and her parents.

## I.     TRIAL COURT PROCEEDINGS

Parents' petition arises from a lawsuit they filed against Camp and a former Camp employee named Keith Edward Woodhouse. As pleaded in the Complaint, Camp

operated a summer camp for children in the first through sixth grades. The Camp website stated: "We take the selection of our summer staff very seriously, so you can be confident that the staff that is chosen is whom we believe will best serve your family." Woodhouse was employed by Camp at various times between 2003 and 2009.

Woodhouse provided child care at a school run by Camp in 2003 and 2004 but was terminated in 2004 by his supervisor for inappropriate interactions with young girls. During a camping trip at Lake Tahoe in approximately 2006, the same supervisor reportedly observed Woodhouse stroking a girl's hair while she sat on Woodhouse's lap.[1] The incident was reported to Child Protective Services but no official action was taken. Later in 2006, Woodhouse was rehired by Camp and began working at its summer camp, supervising young children. Camp staff had further concerns about Woodhouse's behavior toward young girls at the summer camp, including showing inappropriate affection and allowing girls to sit on his lap.

Minor began attending the summer camp in 2006 when she was eight years old. In 2007, a Camp lifeguard noticed minor sitting on Woodhouse's lap in the pool. Woodhouse was kissing minor on the neck. The lifeguard then heard minor complain that "something [is] 'poking me in the butt.' " At that point Woodhouse left the pool with a noticeable erection and entered the bathroom. A male lifeguard followed Woodhouse into the bathroom and heard sounds consistent with masturbation. Despite being advised by the lifeguards upon his return from the bathroom not to hold children on his lap, Woodhouse was seen with minor on his lap again and minor was later seen lying on Woodhouse's stomach.

Two lifeguards provided written statements to Camp management about the incident. A senior Camp employee investigated the matter and determined there was no

---

[1] The Complaint does not state whether that trip was organized by Camp nor in what capacity Woodhouse participated in the trip.

evidence of inappropriate touching. Woodhouse was nonetheless terminated for failing to follow rules. Camp never disclosed the incident to parents or the police.

Parents learned about the 2007 incident in 2013 through the San Jose Police Department's investigation of allegations that Woodhouse molested other children. The police interviewed minor in approximately January 2011 but the Complaint alleges that parents were not told minor was a victim (as opposed to a witness) until April 2013.

Parents and minor (with Janice Doe acting as minor's guardian at litem) filed the Complaint in November 2013 after Camp's demurrer to their initial complaint was sustained with leave to amend. The Complaint contains eight causes of action related to minor's attendance at the summer camp: (1) assault and battery; (2) negligence; (3) negligence per se; (4) negligent hiring, training, supervision, and retention; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7) "Intentional Concealment (Fraud/Deceit)"; and (8) "Negligent Concealment (Fraud/Deceit)." Camp demurred to the Complaint, asserting that the lawsuit was time-barred by the statute of limitations; that the intentional infliction of emotional distress cause of action was defective because it did not allege any conduct directed at parents; and that the seventh and eighth causes of action regarding concealment were deficient because Camp had no duty to disclose the 2007 incident to parents.

After a hearing, the trial court overruled the demurrer as to the statute of limitations and sustained the demurrer with leave to amend regarding the intentional infliction of emotional distress cause of action. The trial court sustained Camp's demurrer to the seventh and eighth causes of action without leave to amend, reasoning that while Camp may have had a special relationship with children who attended the summer camp sufficient to create a duty to prevent harm to them, "a duty to prevent harm is not the same as a duty to disclose." Parents sought writ relief from this court; we stayed all trial court proceedings, issued an order to show cause to the trial court, and requested briefing from the parties.

3

## II.    DISCUSSION

We review an order sustaining a demurrer de novo, and we assume the truth of all properly pleaded facts unless contradicted by judicially noticed facts.  (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468 (*Cansino*).)  When the demurrer is sustained without leave to amend, we review the determination that no amendment could cure the defects for abuse of discretion.  (*Ibid.*)

The Complaint's seventh and eighth causes of action allege "Intentional Concealment (Fraud/Deceit)" and "Negligent Concealment (Fraud/Deceit)," respectively.  "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."  (Civ. Code, § 1709.)[2] Section 1710, subdivision (3) defines deceit for purposes of section 1709 as including "suppression of a fact, by one who is bound to disclose it, or ... [giving] information of other facts which are likely to mislead for want of communication of that fact."  (§ 1710, subd. (3).)  Judicial interpretations of section 1710, subdivision (3) state that to support a cause of action for fraud by concealment a plaintiff must show: (1) concealment of a material fact by the defendant; (2) the defendant had a duty to disclose that fact to the plaintiff; (3) the defendant concealed the fact with an intent to induce reliance by the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he or she did with knowledge of the concealed fact; and (5) the plaintiff suffered injury.  (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870.)  Camp based its demurrer to the concealment causes of action on the absence of a duty to disclose and the trial court found no such duty.  We likewise limit our review to determining whether Camp had a duty to disclose the suspected molestation to parents immediately after the 2007 incident.

---

[2]  Unspecified statutory references are to the Civil Code.

While a duty to disclose information to prevent harm is a well-established part of the duty to act reasonably in the context of negligence (see *Tarasoff v. The Regents of the University of California* (1976) 17 Cal.3d 425, 431 (*Tarasoff*), parents' position is novel because they look to the same duty as a basis for their concealment causes of action. (Citing *Phyllis P. v. Superior Court* (1986) 183 Cal.App.3d 1193 (*Phyllis P.*).) Fraud by concealment is typically alleged in cases regarding fraudulent business transactions, such as concealment of information by a defendant who has a fiduciary or similar relationship with the plaintiff.[3] Here, based on Camp's special relationships with Woodhouse as an employee and with parents and minor as customers of its summer camp business, we conclude that disclosure of the suspected molestation to parents was part of Camp's duty to act reasonably and prevent harm.

## A. DUTY OF CARE IN NEGLIGENCE CASES

The existence of a duty is a question of law that must be determined on a case-by-case basis. (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 (*Parsons*).) "As a general rule, each person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances... .' " (*Ibid.*; see § 1714 ["Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person ... ."].) However, "legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." (*Tarasoff, supra,* 17

---

[3] See, e.g., *Byrum v. Brand* (1990) 219 Cal.App.3d 926, 931-932, 946-947 [affirming jury verdict in favor of financial consultant in fiduciary fraud action brought by investors related to a land investment for failure to prove fraudulent intent]; *Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1186-1187 [affirming summary adjudication in favor of defendants in fraud action over failure to disclose a prescriptive easement until after plaintiff's purchase of servient property where defendants had no duty to disclose].

Cal.3d at p. 434.) " ' "[D]uty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation.]" (*Dillon v. Legg* (1968) 68 Cal.2d 728, 734.)

The Supreme Court has identified several factors (the so-called "*Rowland* factors") to assist in determining the existence and scope of a duty of care in a given case: "the 'foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' [(*Rowland v. Christian* (1968) 69 Cal.2d 108, 113.)]" (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 203 (*Davidson*).)

In addition to the duty to act reasonably in one's own conduct, one may have a duty to control the conduct of a third party when "the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct ... ." (*Tarasoff, supra,* 17 Cal.3d at p. 435.) Even if a special relationship exists, a defendant's duty of care does not necessarily include the obligation to act proactively to disclose the possibility of future harm from the third party. The Supreme Court explored the contours of the duty of care related to third party conduct in *Tarasoff*, where the court held that a psychotherapist who determines that a patient poses a serious danger of violence to a foreseeable victim bears a duty to exercise reasonable care to protect that potential victim. (*Tarasoff,* at p. 439.) The court refused to adopt a bright-line rule regarding the precise steps therapists must take, explaining that the standard of care will vary depending on the facts of each case. (*Id.* at p. 439 & fn. 11.) The exercise of reasonable care might include warning the victim,

6

notifying the police, or taking other action reasonably necessary under the circumstances. (*Id.* at p. 431.)

The court of appeal in *Phyllis P.* relied on *Tarasoff* to find that a school district's special relationship with a student (Ciera) and, by extension, her mother imposed a duty of reasonable care that included disclosing to the mother that Ciera had been molested by another student. (*Phyllis P., supra,* 183 Cal.App.3d at pp. 1195-1197.) The court focused on the relationship between the parties and the school officials, noting that the mother entrusted Ciera's care to the school officials and that while at school the officials stood in loco parentis. (*Id.* at p. 1196.) In that case school officials failed to supervise the offending student, failed to take steps to protect Ciera, and failed to notify the mother who could have taken steps on her own to protect her daughter. (*Ibid.*) The court concluded that the officials should have foreseen that failing to notify the mother promptly would cause her "more emotional distress than merely informing her of the incidents in the first place." (*Id.* at p. 1197.)

## B. SPECIAL RELATIONSHIPS AS THE BASIS FOR DUTY

Camp has special relationships not only with "the person whose conduct needs to be controlled" (Woodhouse) but also "the foreseeable victim[s] of that conduct" (minor and parents). (*Tarasoff, supra,* 17 Cal.3d at p. 435.) As to Woodhouse, the employer-employee relationship imposes a duty to exercise reasonable care to control the actions of the employee. (See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 ["Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment."].) As to parents and minor, Camp acted as a day care provider, creating a special relationship which imposed a duty to exercise reasonable care to prevent harm to minor while attending the summer camp. (*Fowler v. Seaton* (1964) 61 Cal.2d 681, 688 (*Fowler*) [operator of for-profit preschool nursery had "duty to exercise care in the supervision of the infants in her school, and to keep them under supervision at all times that they were at the nursery"].)

7

Camp knew Woodhouse had an inappropriate interest in young girls from his previous employment with Camp. Despite this knowledge, Camp rehired Woodhouse in 2006 to supervise children at its summer camp. He was observed by Camp employees in 2006 and 2007 being inappropriately affectionate with young girls, including minor.

Contrary to the trial court's reasoning, a duty to prevent harm and a duty to disclose are not discrete but are rather both part of the general duty to act reasonably. By virtue of Camp's special relationships, Camp had a duty to exercise reasonable care to supervise its employee Woodhouse and a duty to exercise reasonable care to prevent harm to minor. Camp's knowledge of Woodhouse's behavior toward young girls heightened its obligation to supervise his interactions with children. Once Camp learned about the pool incident involving minor, which was verified by two percipient witnesses (the lifeguards), its duty to exercise reasonable care to prevent further harm to minor included an obligation to disclose the suspected molestation to parents.

Application of the *Rowland* factors supports the conclusion that the scope of Camp's duty of care on these facts included timely disclosure to parents. (See *Davidson, supra,* 32 Cal.3d at p. 203.) When Camp learned about the incident between Woodhouse and minor, it was foreseeable that both minor and parents would suffer harm if the incident was not promptly reported to parents. Foreseeable harm to parents included the trauma of delayed discovery of minor's molestation and the distress of witnessing minor's psychological struggles without information about a possible cause. (See *Phyllis P., supra,* 183 Cal.App.3d at p. 1197.) For minor, that foreseeable harm included psychological trauma, which might have been mitigated had parents been able to seek immediate counseling. The degree of certainty that minor suffered injury was high, given the incident reports of two lifeguards who witnessed the incident. The connection between Woodhouse's conduct and minor's injury was close, and Camp was obligated to control Woodhouse's improper conduct because of its employment relationship with him. The moral blame attached to failing to disclose suspected molestation to parents is high,

and the policy of preventing future harm to other parents and children also supports an obligation to disclose. Contrasted with those factors, the burden on Camp of disclosing the suspected molestation to parents is low, and Camp's mere discomfort does not overcome the other factors. The final *Rowland* factor, regarding the availability and cost of insurance, applies to the parties equally.

Camp's argument against a finding that it had a duty to disclose the suspected molestation is unpersuasive. Camp asserts that *Phyllis P.* is distinguishable because the special relationship between a school district and its pupils is based on the compulsory nature of education, while minor's attendance at the summer camp was voluntary. But mandatory attendance is merely one of multiple bases for the special relationship in a school context. As *M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 524-525 makes clear, the special relationship between a school and its pupils is also based on "the expectation and reliance of parents and students on schools for safe buildings and grounds, and the importance to society of the learning activity that takes place in schools." That expectation of safety is equally present when parents entrust their children to a day care provider like Camp, which stood in loco parentis while minor was at the camp. (See *Fowler, supra,* 61 Cal.2d at p. 688.) And wholly aside from Camp's relationship with minor and parents, Camp's special relationship with its employee Woodhouse created a duty to exercise reasonable care in controlling his behavior, including disclosure of the suspected molestation when control of Woodhouse's behavior was unsuccessful.

A hypothetical illustrates the point. Instead of suspected molestation, imagine Camp received credible information that minor had been exposed to a disease which might not immediately show symptoms, or that minor had suffered a physical injury that was not readily apparent. In those situations, a reasonable day care provider standing in loco parentis would be expected to disclose information to parents so that they could seek immediate diagnosis and treatment. A contrary result is untenable.

9

Finally, our decision is narrower than that in *Tarasoff*, where the Supreme Court determined that in certain instances the duty to exercise reasonable care will include warning a potential victim about possible future harm. (*Tarasoff, supra,* 17 Cal.3d at p. 439.) By contrast, our decision is retrospective. We find only that Camp's duty to exercise reasonable care to prevent harm to minor and parents encompassed a duty to disclose a credible report of harm suspected to have already occurred.

## III.    DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate that portion of its February 4, 2014 order sustaining without leave to amend Camp's demurrer to petitioners' concealment causes of action and to enter a new order overruling Camp's demurrer to those causes of action.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Premo, J.

*Doe et al. v Superior Court of Santa Clara County/First Baptist Church of San Jose*
**H040674**

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-13-CV-251524 |
| Trial Judge: | Hon. Carol W. Overton |
| Counsel for Petitioners JANICE DOE and JOHN DOE: | Laura Liccardo<br><br>Robert B. Allard<br>CORSIGLIA, MCMAHON & ALLARD, LLP |
| Counsel for Respondent THE FIRST BAPTIST CHURCH OF SAN JOSE: | Irene Takahashi<br>LEWIS BRISBOIS BISGAARD & SMITH |

*Doe et al. v Superior Court of Santa Clara County/First Baptist Church of San Jose*
**H040674**