Filed 6/20/19; Modified and Certified for Pub. 7/18/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DEPARTMENT OF CHILDREN<br>AND FAMILY SERVICES et al.,<br><br>    Defendants and Respondents. | B276699<br><br>(Los Angeles County<br>Super. Ct. No. TC025247) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ross M. Klein, Judge.  Affirmed as modified.

Mahoney Law Group, Kevin Mahoney, Anna Salusky Mahoney and Shawn I. Pardo for Plaintiff and Appellant.

Beach Cowdrey Jenkins, Thomas A. Beach and Mindee J. Stekkinger; Greines, Martin, Stein & Richland, Timothy T. Coates and Carolyn Oill for Defendants and Respondents Department of Children and Family Services and Valerie Arnold.

Horvitz & Levy, Frederic D. Cohen, Dean A. Bochner; Beach Cowdrey Jenkins, Thomas A. Beach and Mindee J. Stekkinger for Defendants and Respondents Children's Institute, Inc. and Vanessa Sykes.

Jane Doe appeals from a judgment of nonsuit and postjudgment awards of attorney fees and costs. Doe sued the Los Angeles County Department of Children and Family Services (DCFS) as well as a private foster care agency for negligence and failure to perform statutorily mandated duties, which she claims resulted in sexual abuse by her foster mother's two sons. Doe contends the defendants were not entitled to nonsuit and that the trial court erred when it denied her request to file a fifth amended complaint, admitted evidence of consent, and awarded attorney fees and costs to the defendants. We affirm the judgment of nonsuit and the attorney fees order, but reduce the amount of costs by $6,988.37.

**FACTS**

Doe was placed in foster care at a very young age. She has spent most of her life moving between different foster homes and group homes. From March to September 2009, 17-year-old Doe lived in the foster home of Stephanie Sykes. Doe told her social worker that her placement in the Sykes home was the best she had ever had. While there, Doe began a sexual relationship with Sykes's 27-year-old son, Dwayne Winston, and became pregnant with his child. Doe alleged Dwayne lived in the garage when she was first placed there, but at some point during her stay, he moved into his own apartment. Doe kept their relationship secret from her social workers. She told them the father of her baby was her friend, Darryl Cathcart. She did not disclose that Dwayne was the father until after the baby was born.

At the end of May, Sykes had to attend an out-of-town funeral and asked her younger son, 22-year-old Clifford Winston, to look after Doe for the weekend. She did not inform the social worker that she was leaving town for the weekend. Clifford took

2

Doe to his house, and while she was there, he raped her. Doe did not report the rape because Dwayne persuaded her to keep it secret so his mother would not lose her license and his brother would not get in trouble. DCFS immediately removed Doe from the Sykes home when she informed her social worker about the rape four months later, on September 28, 2009.

In April 2011, Doe sued Sykes, her sons, the County of Los Angeles, her county social worker, Children's Institute, Inc., and the director of foster care at Children's Institute.[1] Children's Institute is a nonprofit agency that, among other services, screens foster parents, certifies foster homes, and monitors the foster homes. Children's Institute certified Sykes, placed Doe at her home, and assigned one of its social workers to monitor the home while Doe was there.

The case progressed to trial after Doe rejected a $100,000 settlement offer from Defendants. (Code Civ. Proc., § 998.)[2] The first trial ended in a mistrial and a second trial commenced in 2016.

---

[1] Sykes and her sons defaulted on the complaint, and after a default prove up, Doe recovered a total judgment of approximately $2.2 million against them. Because Sykes and her sons did not participate in the litigation, we refer to the County, Children's Institute, and their employees collectively as "Defendants." Additionally, references to the "County" include the County of Los Angeles and Doe's county social worker, Valerie Arnold. References to "Children's Institute" include that agency and its director of foster care, Vanessa Sykes (no relation to Stephanie Sykes).

[2] All further section references are to the Code of Civil Procedure unless otherwise specified.

By then, Defendants had whittled Doe's causes of action against them to the following four: violation of the Child Abuse and Neglect Reporting Act (second cause of action; Pen. Code, § 11165); negligence (fourth cause of action); negligence per se (fifth cause of action); and negligent hiring, supervision, retention, and management (sixth cause of action). In support of her negligence claims, Doe alleged Defendants failed to fulfill their mandatory statutory duties, including visiting her at least three times during her first month of placement and meeting with Sykes at least once a month. Does also alleged Defendants negligently failed to properly screen Sykes and her sons before placing Doe and did not adequately monitor her.

Defendants moved for nonsuit at the close of Doe's case-in-chief. The trial court granted the motion, finding Defendants did not have a duty to protect against criminal acts of third parties where there was no knowledge of their propensities or that criminal misconduct was imminent. Doe appealed from the judgment of nonsuit.

After judgment was entered, Defendants submitted a memorandum of costs. The trial court granted, in part, Doe's motion to tax costs. The trial court also granted the County's motion for attorney fees pursuant to section 2033.420 on the ground Doe wrongfully denied its requests for admission (RFAs). Doe's appeal from the postjudgment orders was consolidated with her appeal from the judgment for nonsuit.

## DISCUSSION

### I. The Trial Court Properly Granted Nonsuit

Doe asserts Defendants were not entitled to nonsuit because the trial court improperly relied on caselaw addressing the duty an adult owes to minors invited into her private home,

4

which is a lower standard than Defendants' mandatory duties to a foster child in their care. In support of her argument, Doe distinguishes between the duties owed by the County, a public entity, which are based in statute, and those owed by the Children's Institute, a private entity, which are based in common law.[3] In either case, Doe essentially alleges Defendants were negligent in failing to perform their duties.[4] Doe, however, failed

[3] In her opening brief, Doe addressed her arguments to all "Respondents" and failed to differentiate between the duties owed by the County and Children's Institute. In its respondent's brief, Children's Institute argued it was not a public entity and its liability could not rest on a failure to discharge any mandatory statutory duties. Doe clarified in her reply brief that her theory of liability as to the County rested on its failure to perform its mandatory duties, but that liability as to Children's Institute rested on common law negligence. As a result, we analyze Doe's claims against the County and Children's Institute separately, as articulated in her reply brief.

[4] The trial court's nonsuit ruling does not expressly address the negligence per se, negligent hiring, or Child Abuse and Neglect Reporting Act (CANRA) causes of action. Doe does not assert this is error or a basis for reversal. (See *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 19, fn. 12 ["issues and arguments not addressed in the briefs on appeal are deemed forfeited"].) At oral argument, the parties agreed it was unnecessary to specifically address these causes of action (or, in the case of negligence per se, a theory) in this opinion because the issues of foreseeability and causation applied to all of the negligence-based causes of action. Additionally, the CANRA claim was encompassed within the negligence cause of action because the failure to report was alleged to be a breach of duty underlying that cause of action.

5

to present sufficient evidence to permit the jury to find in her favor.[5]

## A. Standard of Review

 "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.]  'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses.  Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded . . . .'  A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' " (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.)

In response to a motion for nonsuit, a plaintiff has the right, upon request, to reopen her case to remedy defects raised by the motion.  (*Eatwell v. Beck* (1953) 41 Cal.2d 128, 131–132; *S. C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, 538.)  However, the right to present further evidence is waived unless the plaintiff also makes an offer of proof, describing the evidence and explaining how it would cure the deficiencies.  (*Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1337.)

We review a grant of nonsuit de novo.  (*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1060.)  " 'In an appeal from a judgment of nonsuit, the reviewing court is guided by the . . . rule requiring evaluation of the

---

[5]	Because we affirm the judgment of nonsuit, we need not address Doe's contention that the trial court erred in denying her motion in limine to exclude evidence of consent.

evidence in the light most favorable to the plaintiff.' " (*Marvin v. Adams* (1998) 224 Cal.App.3d 956, 960, quoting from *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838 (*Carson*).) However, a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture. (*Carson, supra,* 36 Cal.3d at p. 839.)

**B. The Negligence Cause of Action Against Children's Institute**

Doe asserted Children's Institute was negligent in screening Sykes's home, certifying it, placing Doe there, and monitoring Doe's placement. However, there was no evidence Children's Institute owed Doe a duty to protect her from the Winston brothers because their sexual abuse was not foreseeable or imminent. Thus, the evidence presented by Doe was insufficient for the jury to find in her favor and nonsuit was properly granted.

**1. Applicable Law**

To prevail in a negligence action, a plaintiff must show the defendant owed a legal duty to her, the defendant breached that duty, and the breach proximately caused injury to the plaintiff. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1145.) A defendant does not owe a legal duty to protect against third party conduct, unless there exists a special relationship between the defendant and the plaintiff. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235.) In that circumstance, "[i]n addition to the special relationship . . . , there must also be evidence showing facts from which the trier of fact could reasonably infer that the [defendant] had prior *actual knowledge*, and thus *must have known*, of the offender's assaultive propensities. [Citation.]" (*Romero v. Superior Court*

7

(2001) 89 Cal.App.4th 1068, 1084 (*Romero*).) In short, the third party's misconduct must be foreseeable to the defendant. (*Delgado, supra*, 36 Cal.4th at p. 244; *Romero, supra*, 89 Cal.App.4th at p. 1081.)

In *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 391–393 (*J.L.*), for example, a minor referred to a home day care by the Children's Institute[6] was sexually assaulted by the grandson of the day care provider. The Court of Appeal affirmed the summary judgment granted in favor of Children's Institute, finding there was no evidence it knew of the grandson's assaultive tendencies. (*Id.* at pp. 395–399; see also *Z.V. v. County of Riverside* (2015) 238 Cal.App.4th 889, 902 [county had no prior knowledge of the social worker's propensity to sexually assault children]; *Doe v. Superior Court* (2015) 237 Cal.App.4th 239, 245 [a summer camp had a special relationship with " 'the foreseeable victim' " of its employee]; *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 156–157 [no liability for negligent supervision where mother who hosted sleepover of daughter's friends did not know the plaintiff left with the male assailants, knew who they were, or knew they had any propensity to commit sexual assault]; *Romero, supra,* 89 Cal.App.4th at p. 1080 ["For reasons we shall explain, we hold that notwithstanding the special relationship between the Romeros and the teenage invitees, the Romeros did not owe a duty of care to supervise Ryan at all times during her visit, to warn her, or to protect her against Joseph's sexual

---

[6]     In that case, Children's Institute provided licensed childcare services to low income or other eligible families through its own facilities or through referrals to licensed home day care providers with whom it contracted. (*J.L.*, *supra,* 177 Cal.App.4th at p. 391.)

assault, because there is no evidence from which the trier of fact could find that the Romeros had prior actual knowledge of Joseph's propensity to sexually assault female minors."]; *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 395 [rejecting claim against Boy Scouts for negligent "selection, supervision and retention" of scoutmaster where there was no information accessible to the Scouts that would cause them to suspect that the scoutmaster "had a propensity to molest children"].)

**2. There Was Insufficient Evidence to Demonstrate Children's Institute Had a Duty to Protect Doe from the Winston Brothers Because It Had No Actual Knowledge of Doe's Contact With the Winston Brothers**

Here, there is no real dispute that Children's Institute had a special relationship with Doe. However, nonsuit was properly granted as there was no evidence from which the jury could reasonably infer Children's Institute knew Doe had contact with Clifford or Dwayne, much less that the brothers possessed criminal propensities that posed a risk to Doe.

In fact, the evidence is to the contrary. Doe repeatedly told the social worker from Children's Institute that her placement in the Sykes home was the best one she had ever had. There is also no evidence Children's Institute knew, as Doe alleged, that Dwayne lived in Sykes's garage when Doe was initially placed there. Doe admitted she hid her relationship with Dwayne from her social workers. Further, it is undisputed Clifford did not live with Sykes in 2009. And, Sykes did not inform anyone from Children's Institute or the County of her plan to leave Doe in Clifford's care when she attended the funeral.

9

Neither was there any evidence to show Children's Institute knew of the brothers' criminal propensities. A background check was conducted on Clifford, who lived with Sykes in 2005 when she applied to be a foster mother. He passed, and continued to have a clean record while Doe lived with Sykes. There is also no evidence that Dwayne possessed a criminal record. Nor is there any evidence either brother had a history of misconduct with any of the other foster children placed in Sykes's home.

Because there was no evidence showing Defendants had actual knowledge of the brothers' criminal tendencies or that they posed any risk of harm, their conduct was not foreseeable. Children's Institute thus did not owe Doe an affirmative duty to protect her from the Winston brothers.

We are not persuaded by Doe's contention that Children's Institute's failure to comply with its mandatory duties created a foreseeable risk of harm to her. In particular, Doe contends Children's Institute: (1) failed to perform the required home study prior to certifying and re-certifying Sykes's foster home pursuant to California Code of Regulations, Title 22, Division 6, Chapter 9.5, section 89227; (2) certified Sykes's foster home even though it was over capacity limits prior to and during Doe's stay, in violation of California Code of Regulations, Title 22, Division 6, Chapter 9.5, sections 89228, 89240, and 89387; (3) failed to follow up with Sykes regarding the removal of a bed in the garage under California Code of Regulations, Title 22, Division 6, Chapter 9.5, section 89252; and (4) failed to adequately train Sykes as required by California Code of Regulations, Title 22, Division 6, Chapter 9.5, section 89405. According to Doe, she would never have been in a position to be sexually abused by the Winston

10

brothers if she had not been placed in a fraudulently certified and over-capacity home from the outset.

Doe relies on *Doe v. United States Youth Soccer Assn., Inc.* (2017) 8 Cal.App.5th 1118, 1129 (*U.S. Youth Soccer*), as instructive on the foreseeability standard. We agree *U.S. Youth Soccer* is instructive. However, it does not help Doe. In *U.S. Youth Soccer,* the plaintiff, a minor, was molested by her coach, who was employed by one defendant and a member of another defendant. (*Id.* at p. 1122.) The court held that the defendants had a duty to conduct criminal background checks of all adults who were in contact with children involved in the defendants' soccer programs, but failed to do so. There was evidence that the defendants were aware that sexual predators were drawn to their organization to exploit children and that there had been prior incidents of sexual abuse of children in their programs. (*Id.* at p. 1135.)

The court reasoned, "The connection between plaintiff's harm and defendants' failure to conduct a criminal background check was close. If defendants had conducted a criminal background check of [the coach], his prior conviction for domestic violence would have been discovered and it would have been highly unlikely that he would have been hired. Thus, he would have had far fewer, if any, opportunities to sexually abuse plaintiff." (*U.S. Youth Soccer, supra,* at pp. 1136–1137.)

Here, Doe does not explain how her injuries were foreseeable absent Children's Institute's failures. Unlike *U.S. Youth Soccer,* the connection between Doe's harm and Defendants' failure is not close. There, a background check would have led to information about whether the coach possessed or lacked criminal propensities. Here, Children's Institute's

11

failure to conduct a home study, enforce capacity limits, follow up on the removal of a bed, or provide adequate training would not lead to information about the Winston brothers' criminal propensities.

Doe further contends it was foreseeable that "adult males could take advantage of her vulnerability," citing to her own history of sexual abuse. However, it would be impossible for Defendants to protect Doe from every adult male seeking to take advantage of a vulnerable young teenager. This is particularly true when Doe worked to keep secret her relationship and contact with the Winston brothers.

The other cases on which Doe relies do not assist her either. Both *M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517 (*M.W.*) and *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741 (*Dailey*), each contain an element of foreseeability absent here.

In *M.W.*, the plaintiff, a special needs student, was sexually assaulted by another student on campus in the morning before school started. The school provided no scheduled supervision during that time, even though it was aware that students, including the special needs plaintiff, were present on campus. The plaintiff had previously complained about his assailant and the assailant had a history of inappropriate and violent behavior against teachers and other students. (*M.W., supra,* 110 Cal.App.4th at p. 520.) The court concluded that "[s]uch conduct created a foreseeable risk of a particular type of harm—an assault on a special education student. Not only was such an assault reasonably foreseeable, it was virtually inevitable under the circumstances present on this campus." (*Id.* at p. 521.)

12

Doe also relies on *Dailey, supra,* 2 Cal.3d 741, for the proposition that Defendants had a duty of supervision that included an obligation to offer her some protection against her own lack of mature judgment. It does not help her case. In *Dailey,* the plaintiff high school student died while participating in a "slap fight" with his friend, another student, during school hours. There was no supervision in that area of the campus. The Supreme Court reversed the directed verdict, concluding there was sufficient evidence to support a verdict in the plaintiff's favor. The high court found "[t]he events which occurred in the instant case are precisely what one would expect from unsupervised adolescents." (*Id.* at p. 751.)

Here, in contrast, Doe proffered no evidence showing that her sexual abuse was "precisely" what one would expect from a failure to comply with the regulations at issue. Neither was the sexual abuse "virtually inevitable." The record instead showed Children's Institute did not know of Doe's contact with the brothers or that the brothers possessed criminal propensities. Doe failed to establish that her abuse by the Winston brothers was foreseeable.

Although Doe attempts to distinguish *Romero* and other cases cited in this opinion on the ground they addressed the duty owed to an invitee to a private home rather than the duty owed to a foster child, she does not dispute that foreseeability is a necessary factor in determining whether a duty is owed. Nor could she; the "actual knowledge" standard articulated in *Romero* has been applied in cases involving special relationships, including the foster care context. We have cited and discussed those cases above.

13

### C. The Statutory Negligence Cause of Action Against the County

In California, a public entity is not liable for an injury arising from an act or omission of the public entity or a public employee except as provided by statute. (Gov. Code, § 815.) Thus, a common law negligence claim may not be asserted against the County. (*Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1457 (*Becerra*).) However, Doe asserted the County and county social worker, Valerie Arnold, are liable for her injuries under Government Code sections 815.6 and 820.[7] It appears the parties and the trial court treated Government Code section 815.6 as setting forth a form of statutory negligence. Even if the trial court should have expressly addressed Doe's claims against the County under the rubric of Government Code section 815.6, there was no prejudice resulting from this failure because the claim would not have survived nonsuit. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 748, 757–758 [although trial court's grant of nonsuit in favor of respondent on court's own motion was "irregular," the court found no prejudice because the plaintiff's claims would not have survived nonsuit].)

Government Code section 815.6 provides, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind

---

[7] Government Code section 820, subdivision (a), provides "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Thus, Arnold, a public employee, may be personally liable for negligence, a common law tort. Our conclusion that there was insufficient evidence of foreseeability applies equally to the negligence claim against Arnold as it does to Children's Institute.

14

proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." " 'Government Code [section] 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity:  (1) an enactment must impose a mandatory, not discretionary, duty . . . ; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability . . . ; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered.' [Citation.]" (*Becerra, supra,* 68 Cal.App.4th at p. 1458.)  It is the third prong with which we are concerned.

Doe asserts the County breached three mandatory duties as described in the Department of Social Services Manual of Regulations (DSSMR):  1) it failed to visit Doe at Sykes's foster home at least three times in the first 30 calendar days of her placement pursuant to DSSMR section 31-320; 2) it failed to conduct monthly visits with Sykes as required by DSSMR section 31-330.21;[8] and 3) it failed to report Doe's statutory rape despite knowing she was pregnant by an 18 year old as required under DSSMR section 31-501 and CANRA, Penal Code sections 11164 through 11174.3.  Here, the evidence presented by Doe was insufficient to permit a jury to find the breach of these duties was a proximate cause of her injuries.

---

[8]     Arnold documented her in-person contact with Doe at Sykes's home on March 13, April 8, May 29, June 12, July 2, August 7, and September 8.  Sykes was present at each meeting except for the one on August 7.  The record shows Arnold's breach of her mandatory duties under the DSSMR consisted of two missed visits with Doe during her first 30 days of placement and one missed meeting with Sykes in the month of August.

15

Despite Doe's assertion that Arnold could have discovered Dwayne and Clifford's presence at the Sykes's home if only she had fulfilled her mandatory obligations on visitation, it is undisputed Doe actively hid her contact with the Winston brothers from Arnold and her other social workers. Doe admitted she intentionally misled her social workers to believe her baby was fathered by someone else. Doe also kept the rape from her social workers for four months.

Doe contends, "Had Ms. Arnold visited Appellant three times within the first 30 days of placement, she *could* have discovered Dwayne Winston resided at the Sykes Foster Home and that he had a romantic interest in Appellant . . . . Ms. Arnold *could* have intervened . . . she *could* have taken a firm stance to discourage any romantic relationship. Such a stance *could* have also discouraged Dwayne's brother, Clifford, from making any advances towards Appellant. (Italics added.)" Given that Doe intentionally kept her contacts with Dwayne and Clifford from her social workers, it is pure speculation to conclude the sexual abuse would not have occurred had Arnold visited Doe two additional times within the first 30 days of her placement and met with Sykes in August. We decline to reverse the judgment of nonsuit as Doe's proof raises nothing more than speculation, suspicion, or conjecture. (*Carson, supra*, 36 Cal.3d at p. 839.)

As to the CANRA violation, Doe asserts Arnold knew Doe was under 18 at the time she became pregnant and was informed that the father was her boyfriend, who was over 18. As a result, she was required to report the statutory rape. Even if Arnold was required to report the incident, there is no evidence the failure to report was a proximate cause of Doe's injury as the

16

injury had already occurred by the time she asserts it should have been reported. Indeed, Doe fails to identify what injury resulted from the failure to report, except to state that she "was left to deal with her adult pursuer for an additional three and a half weeks." Beyond this statement, however, Doe does not assert, much less cite to evidence, that Dwayne continued to pursue her during those three and a half weeks, that it was unwanted, or that she even had contact with him during that time. Again, there is insufficient evidence of causation to allow a jury to find in her favor on her claims against the County.

## II. The Trial Court Did Not Abuse Its Discretion When It Denied Leave to File a Fifth Amended Complaint

Two days prior to concluding her case-in-chief, Doe sought leave to file a fifth amended complaint to add fraud and intentional concealment causes of action against Children's Institute, as well as a claim for punitive damages. Doe argued amendment was necessary to conform the pleading to the testimony because Children's Institute employees testified at trial that they did not comply with home study requirements to certify and recertify Sykes's home as a foster home. They also testified that one of the signatures on the certification was forged. The trial court denied the request because it was untimely. We find no abuse of discretion. (*Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1111.)

" ' "[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.]" ' [Citation.] Nevertheless, it is also true that courts generally should permit amendment to the complaint at any stage of the

17

proceedings, up to and including trial. [Citations.] But this policy applies ' "only '[w]here no prejudice is shown to the adverse party.' " ' [Citation.] Moreover, ' " 'even if a good amendment is proposed in proper form, unwarranted delay in presenting it may–of itself–be a valid reason for denial.' " ' [Citations.] Thus, appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence . . . ." ' [Citation.]" (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (*Melican*).)

Here, the trial court reasonably found Doe should have filed the proposed amended pleading earlier. Doe filed her motion to amend two days before she rested her case-in-chief. Yet, she was aware of the facts underlying her proposed amendment well before then. Doe raised the issue that Children's Institute did not meet certain requirements when it certified and recertified Sykes's foster home in her opposition to Defendants' summary judgment motion one year before trial. Moreover, Doe was provided the forged certification document during discovery and had the opportunity conduct further discovery on it. She did not.

Doe provides no reason for the delay and fails to address it in her appellate briefs. Unexplained delays in seeking leave to amend is a valid reason to deny amendment. (*Melican, supra,* 151 Cal.App.4th at p. 175; *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.) The trial court's decision not to allow amendment at that late stage was not an abuse of discretion.

18

## III. The Trial Court Did Not Abuse Its Discretion When It Awarded Attorney Fees for Unreasonably Denied Requests for Admissions

Doe contends the trial court abused its discretion in imposing attorney fees for her unreasonable denial of the County's RFAs. In addition to questioning the "substantial importance" of the disputed RFAs, Doe contends she had good reasons for refusing to admit them. We find no abuse of discretion.

### A. Applicable Law

A party to a civil action may propound a written request for the admission of "the genuineness of specified documents, or the truth of specified matters of fact, opinion relating to fact, or application of law to fact." (§ 2033.010.) If the requesting party proves the truth of an RFA previously denied by the other party, the requesting party may move the court for an order requiring the other party pay the reasonable expenses incurred in making that proof, including reasonable attorney fees. (§ 2033.420.) Section 2033.420 is a procedural mechanism designed to expedite trial by reducing the number of triable issues that must be adjudicated. (*City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 359.)

Under the statute, the trial court shall order the party denying the RFA to pay the costs of proof unless: (1) an objection was sustained to the request or a response was waived; (2) the admission sought was of no substantial importance; (3) there was reasonable ground to believe that party refusing to admit the matter would prevail on the matter; or (4) there was other good reason for the failure to admit. (§ 2033.420, subd. (b).) An RFA has "substantial importance" if it is "central to disposition of the

19

case." (*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 509.) In evaluating whether a "good reason" exists for denying a request to admit, "a court may properly consider whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial." (*Id.* at p. 511.)

" 'The determination of whether "there were no good reasons for the denial," whether the requested admission was "of substantial importance," and the amount of expenses to be awarded, if any, are all within the sound discretion of the trial court. [Citation.]' " (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753.)

### B. Analysis

During discovery, Doe denied sixteen RFAs served by the County. RFA numbers 1 through 10 asked Doe to admit that Arnold and other County employees visited her in 2009 on March 13, April 8, April 20, May 29, June 12, July 2, August 7, September 8, September 28, and October 8. Attached to the RFAs were computer logs kept by the County documenting when and where the visits were held, who attended, and the purpose of the visit. Plaintiff refused to admit the RFAs on the ground she did not recall the exact dates of her meetings with the County social workers.

RFA numbers 11 and 12 requested Doe admit that she first reported she had been raped by Clifford at a court hearing on September 28, 2009, and she first informed Arnold of the rape on the same day. Plaintiff denied these RFAs as well. Doe also denied RFA numbers 16 through 20, which sought admissions that the County fulfilled its statutory duties to her.

20

After nonsuit was granted, the County moved for attorney fees totaling $85,459.50 pursuant to section 2033.420. The trial court granted the motion as to RFA numbers 1 through 12, but found Doe had good reason to refuse to admit RFA numbers 16 through 20. Thus, it ordered Doe to pay to the County $19,500 in attorney fees, equal to 100 hours at $195 per hour.

Doe contends she reasonably refused to admit RFAs 1 through 10 because she could not recall the exact days when her County social workers visited her. At trial, however, Doe acknowledged she met with Arnold, her assigned County social worker, twice at the Sykes foster home and "many" other times. Arnold also testified to monthly visits with Doe. This testimony was supported by the contact logs maintained by the County which described the visits made by Arnold on March 13, April 8, May 29, June 12, July 2, August 7, and September 8. The County provided the logs to Doe in discovery and Doe does not contend the County's records were incomplete or false. Since RFAs are not limited to matters within the personal knowledge of the responding party, that party has a duty to make a reasonable investigation of the facts. (*Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 634.)

To support her contention that her denial of RFA numbers 1 through 10 was reasonable, Doe cites only to her own self-serving testimony that Arnold was not truthful in her testimony about the frequency of the visits and that Doe often was unable to contact Arnold by phone. Given the County's records and her obligation to make a reasonable investigation, the trial court did not abuse its discretion to conclude Doe unreasonably refused to admit RFA numbers 1 through 10.

As to RFA numbers 11 and 12, Doe argues she did admit them. Not so. The two RFAs sought admission that Doe first reported the rape at a court hearing and to Arnold on September 28, 2009. Doe initially responded she could not admit or deny the RFA because investigation and discovery were still ongoing. She later provided a supplemental response: "Deny to the extent that Appellant cannot recall Valerie Arnold visiting Responding Party on this date." The responses were identical as to both RFAs. Doe contends the supplemental response admits RFA numbers 11 and 12. We do not read the supplemental response as an admission that Doe reported the rape on September 28, 2009. Indeed, a fair reading of the supplemental response indicates she contests she reported the rape on that date. The trial court did not abuse its discretion to award attorney fees because Doe unreasonably denied RFA numbers 11 and 12.

We find meritless Doe's contention that attorney fees are not warranted because none of the facts underlying the RFAs were used by the trial court in its nonsuit determination. Relying on *Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 865 (*Stull*), Doe contends that because nonsuit was granted, Defendants never presented evidence to the jury, and no attorney fees were warranted. *Stull* is distinguishable.

There, the responding party refused to admit an RFA during discovery but later conceded its truth before trial began. As a result, there was no trial and no need to offer proof of the RFA. (*Stull, supra,* 92 Cal.App.4th at pp. 865–866.) Here, trial had begun and Defendants were required to present evidence to the jury during Doe's case-in-chief regarding the dates she met with Arnold and when she told her social workers about the rape.

22

*Stull* does not prevent Defendants from recovering attorney fees under these circumstances.

Neither are we convinced RFA numbers 1 through 10 have no substantial importance because the trial court did not rely on them in its nonsuit ruling. Doe's principal claim against the County was that it failed to adequately monitor Doe, resulting in harm by the Winston brothers. The frequency of the County's visits to Doe at Sykes's home was central to Doe's claim. RFA numbers 11 and 12 also were also of substantial importance to the case, since they involve Doe's withholding of information about the rape from her social workers, a key component of foreseeability.

Finally, we find the trial court did not abuse its discretion by awarding $19,500 in attorney fees to the County. Doe has made no showing that the amount is unreasonable except to argue that the County should only recover fees for working on the RFAs themselves. Contrary to her contention, section 2033.420 expressly requires the other party pay the reasonable expenses incurred in proving the truth of the RFAs. We find no abuse of discretion in the amount of the award.

## V. The Trial Court Did Not Abuse Its Discretion to Refuse to Tax Certain Costs

After the trial court granted nonsuit, Defendants filed a memorandum of costs, requesting a total of $146,717.87 pursuant to section 1033.5. Doe filed a motion to tax costs, seeking to strike $113,4259.69 from the total sought by Defendants. After extensive briefing and argument, the trial court taxed $32,289.15 from the amount requested and ordered Doe to pay $114,428.72 in costs.

Doe challenges certain costs the trial court allowed. Defendants[9] concede that the investigative expenses in the amount of $6,988.37 are not allowable under section 1033.5, subdivision (b)(2).  We amend the postjudgment order accordingly, but otherwise find substantial evidence supports the costs order.

### A.  Standard of Review

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  (§ 1032, subd. (b).)  Section 1033.5 lists the items allowable as costs and those that are not.  Section 998 also entitles the prevailing party to recover certain costs that are otherwise disallowed under section 1033.5.  Allowable costs must be "reasonably necessary to the conduct of the litigation" and "reasonable in amount."  (§ 1033.5, subd. (c)(2)–3).)  Costs that are "merely convenient or beneficial to its preparation" are disallowed.  (§ 1033.5, subd. (c)(2).)

The losing party may dispute any or all the items in the prevailing party's memorandum of costs by filing a motion to strike or tax costs.  (Cal. Rule of Court, rule 3.1700(b).)  If items on a memorandum of costs appear to be proper charges on their face, those items are prima facie evidence that the costs, expenses, and services are proper and necessarily incurred. (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1266; *Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 266.)  The burden then shifts to the objecting party to show them to be unnecessary or unreasonable.  (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 131.)

---

[9]     The County joined in the arguments set forth by Children's Institute on this issue.

24

Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for an abuse of discretion. (*Lubetzky v. Friedman* (1991) 228 Cal.App.3d 35, 39.) "The trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision." (*Ibid.*)

### B. Filing Fees Are Recoverable Trial Costs

Filing fees are recoverable under section 1033.5, subdivision (a)(1). Nevertheless, Doe argues filing fees are not recoverable in this case because the County is exempt from paying filing fees under Government Code section 6103. Although a public agency is exempt from *paying* filing fees, they are nevertheless *incurred*. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 164.) Thus, they are recoverable as costs. (§ 1033.5, subd. (c)(1) ["Costs are allowable if incurred, whether or not paid."].)

Doe also disputes the amount of the fees, contending they must be courier fees because they do not reflect the fees listed in the Superior Court's fee schedule for 2012. Doe presents no evidence to show the fees sought to be recovered by Defendants are courier fees, beyond the bald assertion that they are. This is insufficient to meet her burden to show the cost was not proper. In any event, we see no prejudice to Doe as the fees Defendants seek to recover are substantially less than the fees listed in the Superior Court's fee schedule (e.g., Defendants seek to recover $57.90 to file an answer when the fee schedule lists $435 to file an answer). The trial court did not abuse its discretion to award these fees.

## C. Service of Process Fees Are Recoverable Trial Costs

Doe next challenges the recovery of fees related to service of process for witnesses who were never deposed and never testified at trial.  In general, service of process fees are recoverable under section 1033.5, subdivision (a)(4).  As Doe acknowledges, the Code of Civil Procedure does not limit the recovery of service of process fees to witnesses used at trial.  Doe presents no evidence to demonstrate the witnesses were not "reasonably necessary to the conduct of the litigation" (§ 1033.5, subd (c)(2)) despite not having testified at trial.  Thus, the trial court did not abuse its discretion to decline to tax these costs.

## D. Expert Witness Fees Are Recoverable Trial Costs

Doe also disputes Defendants' recovery of their expert witness fees because their experts were not ordered by the trial court, as required under section 1033.5, subdivision (b)(1).  However, expert fees incurred and reasonably necessary in the preparation for trial are recoverable as a discretionary item of costs pursuant to section 998.[10]  (*Jones v. Dumrichob, supra,* 63 Cal.App.4th at p. 1262.)

---

[10]    Code of Civil Procedure section 998, subdivision (c)(1), provides:  "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

Doe asserts the trial court abused its discretion by allowing recovery of the fees for expert Clark Clipson, a witness who did not testify at trial. Doe fails to meet her burden to show why Clipson was not reasonably necessary in the preparation of Defendants' case for trial. Doe acknowledges Clipson was deposed, but claims reimbursement for this expense is not allowed because his deposition testimony was not read at trial. Because Doe presents no evidence to support an argument that his expertise was not reasonably necessary to prepare for trial, the trial court did not abuse its discretion to award the expert witness fees.

### E. Copying Costs Are Recoverable Trial Costs

Doe additionally challenges the amount awarded for photocopies of the trial exhibits. Doe arbitrarily assigns a "reasonable" rate of 10 cents per page for photocopies. From there, she calculates Defendants may not recover more than $200 for photocopying the trial exhibits. Again, Doe presents no evidence to demonstrate that 10 cents per page for photocopies is a "reasonable" rate. We find the trial court did not abuse its discretion when it found Defendants are entitled to recover $1,547.03 for photocopies of the trial exhibits.

### F. Lodging and Meal Expenses Are Recoverable Trial Costs

Doe next complains of the trial court's decision to allow recovery of $33,723.28 in expenses for meals and lodging. We are not persuaded.

Doe acknowledges these costs may be recoverable subject to the trial court's discretion under section 1033.5, subdivisions (c)(2) and (c)(4). However, she argues the trial court abused its discretion to allow their recovery in this case because "[l]awyers

must eat whether they are conducting litigation or not." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 (*Ladas*).)  *Ladas* is inapplicable because it involved seeking reimbursement for meal expenses while attending local depositions.  Meal expenses incurred by attorneys while attending out-of-town depositions, on the other hand, have been held to be recoverable.  (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 541 ["Although the incurring of meal expenses may be merely convenient to an attorney attending a local deposition, meal expenses may be reasonably necessary where an out-of-state attorney must travel to the deposition"]; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 72 [distinguishing local meal expenses from meal expenses incurred while traveling].)  In this case, the meal expenses at issue were incurred during trial, which was located approximately 90 miles from defense counsel's office in Oxnard.  Accordingly, there was no abuse of discretion.

Doe also challenges the court's allowance of travel expenses incurred by a Sacramento-based legal assistant, who Doe asserts was not reasonably necessary to the litigation and who could have been replaced by a local legal assistant.  However, Defendants explained the legal assistant was defense counsel's paralegal, and had been involved in the case from the outset.  Indeed, she assisted with the preparation, organization, and management of exhibits, documents, and witnesses.  She also helped finalize and file documents prepared during trial.  Once again, we find the trial court acted within its discretion in concluding her presence at trial was reasonably necessary to conduct the litigation and in allowing recovery of her meals and

28

lodging expenses.  (§ 1033.5, subd. (c)(2); see also *Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 59–60.)

Doe also suggests Defendants sought double recovery for certain witnesses by requesting travel expenses for witnesses for whom they had already requested ordinary witness fees (which include travel expenses).  However, Doe has failed to identify who these witnesses are and what fees were allegedly recovered, so we decline to entertain this contention.

### G.  Courier Fees Are Recoverable Trial Costs

Doe next contends it was improper to award $853.59 in courier fees when postage is not recoverable under section 1033.5, subdivision (b)(3).  Courier and messenger fees are recoverable, at the discretion of the trial court, if they are reasonably necessary to the conduct of the litigation.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 857–858 [rejecting argument that messenger fees were not recoverable because they could have been avoided by using postal service]; *Ladas, supra*, 19 Cal.App.4th at p. 776.)  Doe's argument presupposes that it was unnecessary to have a courier do what the U.S. Postal Service can do equally as well.  Yet, Doe has presented no evidence to support the argument that use of the postal service was appropriate in all circumstances, given the complexity of this litigation.  The trial court was within its discretion to decide otherwise.

### H.  Litigation Support Vendor Fees Are Recoverable Trial Costs

Lastly, Doe argues telephonic appearance fees and trial equipment fees were not reasonably necessary to the conduct of the litigation, but instead were merely convenient or beneficial. Doe provides no evidence or additional facts to support this

29

statement.  Fees for telephonic court appearances are "a recoverable cost under Section 1033.5 . . . "  (§ 367.6, subd. (c).)  Likewise, costs for audio-visual equipment are recoverable under section 1033.5, subdivisions (a)(13) or (c)(4).  Doe has not met her burden to show the award of these costs was an abuse of discretion.

## DISPOSITION

The judgment of nonsuit is affirmed.  The postjudgment order dated November 17, 2016, is modified to reflect trial costs are additionally taxed $6,988.37 for disallowed costs for investigative expenses.  The postjudgment orders awarding trial costs and attorney fees are otherwise affirmed.  Defendants to recover their costs on appeal.


BIGELOW, P. J.

We concur:



STRATTON, J.



WILEY, J.

30

Filed 7/18/19

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al.,<br><br>    Defendants and Respondents. | B276699<br><br>(Los Angeles County Super. Ct. No. TC025247)<br><br>ORDER MODIFYING OPINION AND CERTIFYING PUBLICATION<br><br>[change in the judgment] |

IT IS ORDERED that the opinion filed in the above-captioned matter on June 20, 2019, be modified as follows:

1. On page 9, in the second full paragraph, the following footnote is added to the end of the second sentence, which reads, "her placement in the Sykes home was the best one she had ever had."

By this statement, we do not suggest it was Doe's responsibility to alert Children's Institute or the County to any misconduct or potential harm. Nor do we imply that Doe's stated contentment with her placement released Defendants from their duties to her.

2. On page 17, lines 7 and 8, the phrase "that it was unwanted" is deleted.

This modification effects change in the judgment.

The opinion in the above entitled matter, filed on June 20, 2019, and modified on July 18, 2019, was not initially certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

BIGELOW, P. J.          STRATTON, J.          WILEY, J.