Filed 7/30/21  St. John Armenian Church v. Divine Food and Catering CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ST. JOHN ARMENIAN CHURCH et al., | B298437 (Consolidated with B302536) |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 18STCV02144) |
| v. | |
| DIVINE FOOD AND CATERING, LLC, et al., | |
| Defendants and Respondents. | |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge. Affirmed.

Kabateck, Brian S. Kabateck, Shant A. Karnikian; Greines, Martin, Stein & Richland, Robert A. Olson and Nadia A. Sarkis for Plaintiffs and Appellants.

Grignon Law Firm, Margaret M. Grignon, Anne M. Grignon; Susan Yu Law Group, Susan C. Yu and Eric M. Lode for Defendants and Respondents.

Plaintiffs and appellants St. John Armenian Church (St. John) and Western Diocese of the Armenian Church (the Diocese) (collectively, appellants) attempted to oust defendants and respondents Divine Food and Catering, LLC (Divine) and Petros Taglyan (Taglyan) (collectively, respondents) from a banquet hall on church grounds.

The trial court awarded possession of the hall to respondents according to the terms of a written lease agreement. It also ordered monetary sanctions against appellants due to their repeated denials of the lease's authenticity. Appellants appeal from both decisions.

While the operative written lease agreement was drafted imprecisely, the trial court correctly relied upon extrinsic evidence to determine that the parties' objective was, indubitably, for respondents to lease the church banquet hall facilities for food service operations. Any other construction of this lease would be absurd.

The trial court also concluded that appellants' principal witness had testified falsely at trial in order to cover up the existence of two written agreements. Granting unlawful detainer under these circumstances would be fundamentally unfair. Relatedly, the trial court properly exercised its discretion to award sanctions against appellants. Therefore, we affirm.

## FACTUAL BACKGROUND

St. John is one of the parish churches in the Diocese, a branch of the Armenian Apostolic Church. The church's main property is located at 1201 North Vine Street in Los Angeles, California. St. John is headed by Priest Manoug Markarian (Father Markarian), who is the church's sole head priest and a member of the diocesan council.

In 2003, parishioner Taglyan either gave or loaned the Diocese and St. John $300,000 to rent out an adjacent property located at 1219 North Vine Street. Taglyan also financed the construction of a banquet hall on the property, and agreed to undertake operation and maintenance of the hall.

When the banquet hall opened, Taglyan asked his son's catering business, Divine, to take over the hall's food service operations. Although Divine first took possession of the hall in 2009, it did not enter into a written lease with the Diocese or St. John until 2014.

Taglyan negotiated Divine's first lease with Father Markarian, the parish priest for St. John, in 2014. The agreement purported to lease 50 percent of the property at "1201 N Vine St" to Divine through October 1, 2021, in exchange for $4,500 in monthly rent. Because the lease was backdated to the opening of the banquet hall in October of 2007, this lease is referred to as the 2007 lease.

In 2015, Taglyan negotiated a new lease, superseding the 2007 lease. The new lease was also backdated, this time to 2009, when Divine was formed. The 2009 lease extended Divine's lease term to 2039 and increased its monthly rent to $15,000. The 2009 lease also changed the description of the property leased. In addition to providing the address of "1201 N. Vine St," the 2009 lease also lists the corresponding parcel number, "5533-006-003."

## PROCEDURAL BACKGROUND

### A. Unlawful Detainer Complaint

On October 22, 2018, appellants filed an unlawful detainer complaint against respondents to oust them from the property at 1207 and 1219 North Vine Street. The complaint characterized Divine's tenancy as subject to an oral, month-to-month lease with

both Divine and Taglyan.[1]  Appellants claimed to have entered into the lease in October 2007, with a monthly rent of $6,300.  In their answer to the complaint, respondents denied all allegations and alleged affirmative defenses, including assertions that the complaint was barred by both the 2009 lease and by various equitable defenses.

On November 7, 2018, respondents served appellants with requests for admission, asking appellants to admit, among other things, that St. John had entered into the 2009 lease with Divine and that Father Markarian had signed the 2009 lease on St. John's behalf.  Nine days later, respondents served another request for admission that the 2009 lease was genuine.

On December 6, 2018, respondents issued a third and final request for admissions, asking appellants to admit that the 2007 lease was genuine.  Appellants uniformly denied each of these requests, and questioned the authenticity of the 2007 and 2009 leases.

On January 18, 2019, the case went to trial.  The primary issue was "whether there is an oral or written lease agreement," as characterization of the lease agreement would largely decide whether Divine retained any possessory interest in the banquet hall.

The trial court heard testimony from numerous witnesses, including Taglyan, handwriting experts, liquor license officials,

---

[1] Although Taglyan was never dismissed from the lawsuit, he testified that he was not a tenant and disclaimed any possessory interest in the banquet hall.  This disqualifies him from receiving possession in an unlawful detainer suit.  (Code Civ. Proc., § 1161 [stating that only tenants or their representatives or assigns are subject to unlawful detainer].)

management and former employees at Divine, and Father Markarian. All these witnesses testified to the circumstances surrounding the creation of the 2007 and 2009 leases. Notably, Father Markarian denied signing the 2007 and 2009 leases.

When appellants' counsel attempted to elicit testimony about the discrepancy between the address listed on the leases and the address of the banquet hall, Taglyan and other witnesses testified that the church and the banquet hall were understood by the parties to be included in the 1201 North Vine Street address.

At the end of the trial, the trial court's oral statement of decision concluded that "the bottom line is, both the leases were valid and enforceable at the time of their execution . . . [¶] [a]nd . . . that the [2009] lease . . . is the viable and acting lease between the parties . . . ." The court also found, "by a preponderance of the evidence," that "Father [Markarian] actually had the actual authority . . . to sign [the 2009 lease] on behalf of both the plaintiffs." The court opined "[i]t would be a great manifest of injustice if these leases were invalid due to the lack of authority and/or lack of waiver, estoppel, or ratification by" appellants.

The trial court subsequently entered judgment for respondents, and awarded Divine "possession of the premises located at . . . 1207 North Vine Street . . . and 1219 North Vine Street."

## B.    Sanctions

On April 17, 2019, respondents moved for cost of proof sanctions based on appellants' denials of the authenticity of the 2007 and 2009 leases. The trial court granted these sanctions, totaling $43,400 in attorney fees and expert costs.

# DISCUSSION

## A. Unlawful Detainer

Unlawful detainer statutes offer landlords "a summary, expeditious way of getting back [their] property when a tenant fails to pay the rent or refuses to vacate the premises at the end of his tenancy." (*Nork v. Pacific Coast Medical Enterprises* (1977) 73 Cal.App.3d 410, 413.) A defendant can defeat an unlawful detainer suit by showing that he should "preserve his possession as a tenant" or that the landlord should be "preclude[d] . . . from recovering possession." (*Ibid.*) Defendants may also "challenge the existence of the landlord-tenant relationship" as characterized by the landlord. (*Id.* at p. 414.)

"In an appeal from an unlawful detainer judgment, ' "[w]e review the trial court's findings of fact to determine whether they are supported by substantial evidence. [Citation.] To the extent the trial court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo. [Citation.]" ' [Citation.]" (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425-1426.)

Appellants proposed four reasons why the trial court wrongfully awarded possession of the banquet hall to respondents: (1) the 2009 lease purported to lease a different property; (2) the actual owner of the banquet hall was not a party to the 2009 lease; and (3) respondents could not successfully raise any equitable defenses to the unlawful detainer action. Because we affirm the trial court's decision that Divine is entitled to retain possession of the banquet hall under the 2009 lease, we need not address whether respondents could have maintained any equitable defenses to unlawful detainer.

6

### 1. *The Property Descriptions in the 2009 Lease Include the Banquet Hall Property*

The central issue on this appeal is whether the property described in the lease as being located at "1201 N. Vine St" and the corresponding parcel number, "5533-006-003," include the banquet hall.

"A lease must include a definite description of the property leased . . . ." (*Beckett v. City of Paris Dry Goods Co.* (1939) 14 Cal.2d 633, 637; *Action Apartment Assn. v. Santa Monica Rent Control Bd.* (2001) 94 Cal.App.4th 587, 598.)  Generally, the possessory rights of a tenant subject to a lease are limited to the property described in the lease.  (See *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 655-656.)  "We generally apply an independent, or de novo, standard of review to conclusions of law regarding interpretation of the [l]ease . . . ." (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.)

In interpreting the lease, the trial court must "give effect to the mutual intention of the parties as it existed at the time" the contract was executed.  (Civ. Code, § 1636.)  Ordinarily, the objective intent of the contracting parties is determined solely by reference to the contract's terms.  (Civ. Code, § 1639 ["When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"]; Civ. Code, § 1638 ["The language of a contract is to govern its interpretation"].)  "[E]xtrinsic evidence on the parties' intended meaning of language in the [l]ease" is usually considered "only if it [is] relevant to show a meaning to which that language is reasonably susceptible." (*ASP Properties Group, L.P. v. Fard, Inc., supra,* 133 Cal.App.4th at p. 1267.)

Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous. (Code Civ. Proc., § 1856, subd. (g); *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 37; *Dewalt v. Berkeley Forge & Tool, Inc.* (1992) 9 Cal.App.4th 1087, 1094.) Even when a lease agreement appears to be clear and unambiguous on its face, it may contain a latent ambiguity. (*Pacific Gas & Electric Co.*, *supra*, at pp. 39-40.) Thus, if extrinsic evidence reveals that apparently clear language in the contract is, in fact, susceptible to more than one reasonable interpretation, then extrinsic evidence may be used to determine the contracting parties' objective intent. (*Ibid.*; see also *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 389.)

Although the address and parcel number listed in the 2009 lease appear to be unambiguous, respondents contend that the trial court appropriately considered extrinsic evidence to introduce and resolve a latent ambiguity in the lease's property descriptions. We agree.

Several witnesses testified that the 1201 North Vine Street address was used to refer to *both* the banquet hall and the church property. Taglyan testified that "[t]he address we use is 1201, because it's considered as one whole property, including the church, banquet hall, parking, everything." The owner of Divine testified that he had used the 1201 North Vine Street address on Divine's website, and that the 1219 North Vine Street address had never been used as an address for Divine outside of administrative filings with the Secretary of State. A former employee of Divine, who had worked at the banquet hall for two years, testified that she "only" gave the 1201 North Vine Street address to customers. This sufficiently demonstrates that the

8

1201 North Vine Street address used in the 2009 lease was widely understood to include the banquet hall.

No one disputes that the fundamental intent of the parties was for Divine to operate catering services at the banquet hall. While appellants tried to characterize the lease as an oral month-to-month agreement, they do not contend that they intended to lease any property other than 1207 and 1219 North Vine Street to respondents, or that the agreement was for any other purpose than to facilitate catering services for the banquet hall.

Without any dispute as to the parties' basic intent, we must interpret the 2009 lease as including the banquet hall facilities located at 1207 and 1219 North Vine Street. Any other result would be absurd. (*California National Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 143 [construction of a lease "cannot lead to unfair or absurd results but must be reasonable and fair"].) Accordingly, the trial court correctly interpreted the 2009 lease as including the banquet hall facilities.

2.     *St. John Validly Authorized the Lease of the Banquet Hall*

Appellants argue that the trial court erroneously found that St. John had the authority to enter into the 2009 lease on behalf of the Diocese, "[t]he sole owner of the banquet hall and co-tenant for the underlying ground lease." Because the question of one party's agency to act for another "is a question of fact for the trier of fact," we may not disturb the trial court's ruling on this issue if it is supported by substantial evidence. (*Ripani v. Liberty Loan Corp.* (1979) 95 Cal.App.3d 603, 611.)

Actual authority exists when a principal expressly confers such authority or, by his intentional or negligent conduct, causes the agent to reasonably believe that the principal consents to the

9

agent's execution of an act on the principal's behalf. (Civ. Code, § 2316; *Tomerlin v. Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 643.) Here, substantial evidence supports the trial court's conclusion that Father Markarian, as the sole head of St. John, had actual authority to lease out the church's property on behalf of the Diocese.[2]

The trial court found that the Diocese's bylaws did not unambiguously forbid St. John from leasing out church property; instead, it merely limited St. John's authority to "lease . . . real property for the use of the parish." Crucially, the executive director of the Diocese confirmed that, in practice, St. John could commit the Diocese to "[a]ny agreement," because "anything, in reality . . . [that] a parish commits to is part of the Diocese . . . and our bylaws are as such." This amply supports the trial court's conclusion that Father Markarian had the actual authority to lease the banquet hall on behalf of the Diocese.[3]

---

[2] Because we affirm the trial court's ruling on actual authority, we need not address the question of whether Father Markarian had ostensible authority to lease out the banquet hall.

[3] We may quickly dispose of appellants' remaining arguments. First, they argue that Father Markarian never exercised his authority to lease the banquet hall *on behalf of the Diocese*. This ignores Father Markarian's signature on the 2007 lease as the "[o]wner or agent with authority to enter into this agreement." He signed the 2009 lease as the president of St. John, and, as the executive director of the Diocese, testified, "anything . . . [that] a parish commits to is part of the Diocese." Second, appellants argue that St. John did not have the authority to sublease the Diocese's interest in the property, and the trial court exceeded its authority by granting exclusive possession of

10

For the above reasons, we affirm the trial court's decision to award possession of the banquet hall to Divine based on its rights under the 2009 lease.

**B.      Sanctions**

Appellants challenge the trial court's award of sanctions for their failure to admit the authenticity of the 2007 and 2009 leases.

A party to a civil action may submit a written request for the admission of "the genuineness of specified documents, or the truth of specified matters of fact, opinion relating to fact, or application of law to fact." (Code Civ. Proc., § 2033.010.) If the requesting party proves the truth of a request for admission previously denied by the other party, the requesting party may move the court for an order requiring the other party pay the reasonable expenses incurred in making that proof, including reasonable attorney fees. (Code Civ. Proc., § 2033.420.) Section 2033.420 is a procedural mechanism designed to expedite trial by reducing the number of triable issues that must be adjudicated. (*City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 359.)

The trial court must make such an order unless it finds that one of the statutory exceptions applies, including, as relevant here, that "[t]he admission sought was of no substantial

---

the premises to Divine. This argument overlooks long-standing legal principles entitling a co-tenant "to possession of the entire premises" and granting him the authority to "by lease or license transfer his right of possession to another." (*Tompkins v. Superior Court* (1963) 59 Cal.2d 65, 68.) It also misstates the trial court's order, which entitles Divine to "possession" of the banquet hall—not, as appellants contend, to *exclusive* possession.

11

importance." (Code Civ. Proc., § 2033.420, subd. (b)(2).) " ' "The determination of whether 'there were no good reasons for the denial,' whether the requested admission was 'of substantial importance,' and the amount of expenses to be awarded, if any, are all within the sound discretion of the trial court. [Citation.]" ' [Citation.]" (*Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 690.) On appeal, we will not reverse the order granting sanctions unless the trial court abused its discretion. (*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 508.)

As the trial court aptly summarized, the "statute clearly applies . . . because, in my opinion, the weight of the evidence, overwhelming weight of the evidence, is that [the St. John's representative] signed it, and he knew it, and he was covering it up." Consequently, "the vast majority of the trial and the witnesses were on that issue."[4]

Appellants denied a request for admission which asked them to confirm that a representative of St. John signed the leases. Appellants argue that sanctions were not warranted because leases may not have been determinative of either party's possessory rights. This argument misses the point.

The relevant question is not whether the written lease was substantially important to the ultimate *judgment*; instead, we must ask whether, at the time the admission was requested, the material "ha[d] at least some direct relationship to one of the central issues in the case, i.e., an issue which, if not proven,

_____

[4] Appellants do not challenge the trial court's factual findings.

would have altered the results in the case." (*Brooks v. American Broadcasting Co.*, *supra*, 179 Cal.App.3d at p. 509, fn. omitted.)

The authenticity of the leases is directly related to the central issue of the parties' landlord-tenant relationship, and whether the landlord is entitled to repossess the subject property through unlawful detainer. Here, where the lease *was* ultimately dispositive of the tenant's possessory rights, the trial court's determination that the authenticity of the contested lease was of substantial importance was well within its considerable discretion.

## DISPOSITION

The judgment and order are affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

*\** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.