Filed 2/28/24  Cao v. JCH Family Partnership CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DERRECK CAO,<br><br>Defendant and Appellant,<br><br>v.<br><br>JCH FAMILY PARTNERSHIP,<br><br>Plaintiff and Respondent. | F085249<br><br>(Super. Ct. No. 20C0142)<br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

Gomez Law Group, Alvin M. Gomez and Boris Smyslov, for Defendant and Appellant.

Law Offices of Michael J. Lampe, Michael P. Smith, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Hill, P. J., Smith, J. and Meehan, J.

Plaintiff JCH Family Limited Partnership (JCH) owned a house next to a vacant lot owned by defendant Derreck Cao.  The vacant lot became a homeless encampment, with large accumulations of junk, trash, and assorted detritus.  When a fire broke out at the encampment, it soon spread to JCH's property, propelled by the detritus accumulated on the lot.  JCH's house suffered fire damage.  JCH sued Cao for damages.  After a bench trial, the trial court ruled in JCH's favor and awarded damages to it.  Cao appealed.  We affirm.

## PROCEDURAL BACKGROUND

JCH filed a complaint against Derreck Cao on May 20, 2020, initiating this action.  The complaint asserted causes of action for negligence, premises liability, private nuisance, and violation of Health and Safety Code section 13007, and sought monetary damages.  After a one-day bench trial, the trial court found Cao was liable to JCH and ordered Cao to pay damages to JCH in the amount of $30,744.68.  The trial court issued a detailed (amended) statement of decision setting forth its reasoning.  This appeal followed.

## FACTUAL BACKGROUND

JCH is a home rental business.  Among other properties, JCH owns two rental homes on the same lot on Miller Street in Hanford.  The home at the front of the lot is 319 Miller Street and the home at the back of the lot is 319½ Miller Street.  Since June 2019, Andrew Melkonian has served as the property manager for the Miller Street properties, on behalf of JCH.  Next door to these properties is a vacant lot, 409 Miller Street, owned by Derreck Cao.

Derreck Cao acquired the vacant lot at 409 Miller Street by means of a grant deed that transferred title to him on February 4, 2019.  The purchase price of the property was $5,000.  The grant deed was recorded on January 2, 2020.

Since June 2019, Andrew Melkonian, the property manager, would go by JCH's Miller Street properties twice a week.  He would therefore regularly see the condition of

2.

the neighboring vacant lot. Melkonian testified: "It was always a good amount of trash on it. There would be homeless people walking about through it and there were different tents throughout the property and some weeds and brush." He added: "[The] majority of the time, there has been trash, tents, homeless people, garbage," including "tents connected to the fence that bordered the property," separating it from the JCH properties.

On February 6, 2020, the Kings County Department of Health received a complaint about the condition of the vacant lot at 409 Miller Street. The complainant alleged as follows (as described by Kings County personnel): "A lot of transients living on the property and have a lot of trash on the property and have made it a gated community"; "Transients defecating and urinating on the property and [it] is smelling very bad"; and "Has seen rodents and is afraid they are going to end up on his property." Troy Hommerding of the Kings County Department of Health went to inspect the vacant lot on February 13, 2020. At trial, Hommerding described the conditions he found: "There [were] several items out there. Trash. Garbage. People living on it."

Consequently, that same day, i.e., February 13, 2020, Hommerding prepared a notice of violation with regard to 409 Miller Street and mailed it to the owner of record, Derreck Cao, at a San Diego address on file at the county assessor's office. The notice of violation named Cao as "the owner of record and thus, the responsible party." The notice stated: "The conditions on the property constitute[] violations of the following sections of the Kings County Code of Ordinances (KCCO): [¶ ] 1. KCCO § 13-12(a) Private property to be free of excess solid waste and litter[;] [¶ ] 2. KCCO § 13-12(d) Accumulation of solid waste to be removed[; and] [¶ ] 3. KCCO § 14-36 Nuisance; maintenance of property." The notice of violation further stated: "All waste on the property must be removed and properly disposed of in a permitted facility (e.g., landfill or transfer station), and all nuisance conditions must be otherwise abated by March 16th, 2020."

Hommerding attached a photograph of the vacant lot to the notice of violation; the photograph depicts conditions consistent with Hommerding's description of the property in his trial testimony. (Ex. 101.) The parties stipulated that while Hommerding mailed the notice of violation to Cao's residence in San Diego, he specified an incorrect zip code, 92116, as obtained from the county assessor; the correct zip code for Cao's San Diego residence was 92114.

In February 2020, 319½ Miller Street (JCH property) was occupied by a tenant paying $340.00 in monthly rent. On February 19, 2020, a little over a year after Cao acquired the adjacent vacant lot, a fire originated on Cao's vacant lot (Cao lot or Cao property) and spread to the JCH property, causing damage.

Captain John Wilson of the Kings County Fire Department testified for the plaintiff, JCH, as a fire investigation expert. Wilson had been in the Fire Department's fire investigation unit since November 2019, and had investigated numerous fires. Wilson responded to the Cao lot when the fire broke out on February 19, 2020. A total of five firefighting units responded to the Cao lot, four from Kings County Fire Department and one from Hanford City Fire Department. Wilson testified that "[m]ultiple tents and debris" on the Cao lot were engulfed in fire and a physical dwelling on an adjacent lot, that is 319½ Miller, was on fire as well.

Plaintiff's counsel asked Wilson: "Sir, based on your personal observation of the fire and your interviewing of witnesses and your investigation at the time of the fire, is it your opinion that the fire started in the homeless encampment in the vacant lot?" Wilson responded: "Yes, sir." Wilson believed that vagrants, who were trespassers on the lot, caused the fire – there was also evidence a candle had been lighted. However, Wilson clarified: "I was not able in this case to define a specific area of origin, and since I was not able to point to a spot where the fire started, I was unable to determine the cause." As for the role played by the debris on the vacant lot, Wilson testified it contributed to the

4.

spread of the fire. Wilson confirmed the fire started in the homeless encampment and then moved to the JCH property to the south.

The fire damaged the JCH property adjacent to, and south of, the Cao lot. Wilson described the fire damage to the JCH property: "Fire was at the siding on the north side. It did extend to the attic and there was damage in the bathroom from fire that went through an opening, I can assume it's a window in the bathroom, and then we caused damage as well[,] as the fire department attempt[ed] to put the fire out." He elaborated on the damage caused in the course of putting the fire out: "Water damage and also pulling sheetrock down from the rafters and such to put the fire out in the attic and also putting up walls."

Andrew Melkonian described the placement of the JCH rental property relative to the Cao lot: "There is a fence in between [the] 319-and-a-half [property] and the vacant lot and they're within, I mean, they are right on top of each other." Melkonian was not aware of prior instances of fires or criminal activity on the vacant Cao lot.

Derreck Cao testified he has lived in San Diego since January 2019, that is, he was living in San Diego before he acquired the Cao lot. Cao noted he was unaware of the condition of the Cao lot in February 2020 and, as far as he knew, no maintenance or cleanup work was ever done before the fire broke out. Cao also noted he did not have the time to travel from San Diego to Hanford to clean up the Cao lot.

Andrew Melkonian testified the JCH property was uninhabitable following the February 19, 2020 fire until October 2020, when "substantial" fire-related repairs were completed. The fire-related repairs to the JCH property cost $27,932.21. JCH lost its tenant; the tenant last paid rent in February 2020. JCH had been unable to find a new tenant for the property since the fire.

On May 27, 2020, Troy Hommerding from the Kings County Department of Public Health made a second visit to the Cao lot, for another site inspection. Hommerding testified: "I went out on a re-inspection, take a look, see if they had

responded or cleaned." The owner had not cleaned the vacant lot, so that same day Hommerding prepared and mailed off a second notice of violation. The substance of the May 27, 2020 notice of violation mirrored that of the first notice of violation, dated February 13, 2020. Photographs attached to the second notice of violation again showed substantial accumulations of junk on the Cao lot.[1] (Ex. 6.) Both notices of violation were sent to Cao at the same San Diego address (the one on file with the county assessor).

Hommerding confirmed the notices of violation were not returned to him as undelivered. Jennifer Cao, mother of Derreck Cao, testified at deposition (as read into the trial record) that she called Kings County "[s]everal times" with regard to the notices of violation for Derreck Cao. Specifically, Jennifer Cao testified at deposition: "And in 2020 I called [the county] many times, ask for help from the county about the situation of the homeless when Derr[e]ck got the note and I help Derr[e]ck take care of the note of violation of the property. And I called and I asked their help because I get the homeless out and then they come back."

Andrew Melkonian testified that, as of January 2022, the Cao lot was cleaned up and secured by a chain link fence with barbed wire at the top.[2]

### TRIAL COURT'S RULING

After conclusion of the one-day bench trial, the trial court issued a statement of decision. In the statement of decision, the court made findings of fact, delineated the applicable legal framework, analyzed the issues presented in the case, and reached its ruling. After first outlining the factual background and findings, the trial court delineated the applicable legal standards:

---

[1] In its statement of decision, the trial court stated, with respect to the photographs from May 27, 2020: "The photos … depict a significantly larger amount of trash and debris than was shown in the photos [from February 19, 2020]."

[2] The trial in this matter took place in April 2022.

"A property owner has a duty to maintain his or her property in a safe condition. (California Civil Code[,] § 1714(a); *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 768.) Premises liability may exist where the property owner fails to take reasonable steps to ensure the property against criminal acts by third persons. (*Delgado v. American Multi-Cinema Inc.* (1999) 72 Cal.App.4th 1403, 1406, fn. 1.) 'To comply with this duty, a person who controls property must " ' " 'inspect [the premises] or take other proper means to ascertain their condition' " ' " and, if a dangerous condition exists that would have been discovered by the exercise of reasonable care, has the duty to give adequate warning of or remedy it.' (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 833, fn. 12.) 'The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury. [Citations.] Premises liability " 'is grounded in the possession of the premises and the attendant right to control and manage the premises' "; accordingly, " 'mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act.' " (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)

"Negligence per se is not an independent cause of action and does not establish tort liability, but rather the same gives rise to a presumption of negligence in the absence of justification or excuse, provided that the person suffering the injury was one of the class of persons for whose protection the statute was adopted. (Evid. Code[,] § 669; *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 331.) Under the doctrine of negligence per se, compliance with the standard of conduct established by the relevant statute, ordinance, or regulation is adopted as the duty of care. (*Alarid v. Vanier* (1958) 50 Cal.2d 617, 622.) It can be applied generally to establish a breach of due care under any negligence-related cause of action. (*Norman v. Life Care Centers of America, Inc.* (2003) 107 Cal.App.4th 1233, 1248.)

"To establish a claim of private nuisance under the facts of this case, Plaintiff must prove all of the following: 1. That Plaintiff owned the property; 2. That Defendant, by acting or failing to act, created a condition or permitted a condition to exist that … was a fire hazard to Plaintiff's property; 3. That Defendant's conduct in acting or failing to act was intentional and unreasonable[,] or unintentional, but negligent and reckless; 4. That this condition substantially interfered with Plaintiff's use or enjoyment of his land; 5. That an ordinary person would reasonably be annoyed or disturbed by Defendant's conduct; 6. That Plaintiff did not consent to Defendant's conduct; 7. That Plaintiff was harmed; 8. That

7.

Defendant's conduct was a substantial factor in causing Plaintiff's harm; and 9. That the seriousness of the harm outweighs the public benefit of Defendant's conduct. (1 CACI 2021.) A private nuisance may be abated by the party injured at his or her own risk; or the injured party may bring a civil action for an injunction, damages, or both. (Civ. Code[,] § 3501; Code Civ. Proc.[,] § 731.)"

The court then analyzed and ruled on the issues before it (footnotes in the following excerpt are part of the original text but are necessarily renumbered):

"Having fully considered all law and evidence in this case, the court finds as follows:

"1.     On the issue of liability, IT IS HEREBY ORDERED that judgment shall be entered in favor of JCH FAMILY LIMITED PARTNERSHIP as against Defendant DERR[E]CK CAO. Defendant owned the vacant lot for more than a year prior to the subject fire, during which time significant and increasing trash and debris accumulated thereon as a result of homeless living thereon. The circumstantial and direct evidence within the record supports a finding by this court that Plaintiff has established by a preponderance of the evidence that: (1) the fire started on the Cao Property and was most likely ignited as a result of transient conduct, and (2) the fire was fueled in its spread to the abutting JCH Property by the waste and debris allowed to exist on the Cao Property.

"In regard to Defendant's argument that he had no duty to Plaintiff to protect it from the criminal acts of third parties,[3] the court finds that in this case the evidence establishes misfeasance by Cao via the breach of his clear duty to abate nuisances from his property. (See e.g., Kings County Ordinances 13-1, 13-12(a), 13-12(d) and 14-31, 14-36, 14-37.) By his breach of such duty, Defendant Cao created an unreasonable risk of harm to both his own property and that of his neighbors.[4]

---

[3] "Citing, *Weirum v. RKO General, Inc*. (1975) 15 Cal.3d 40, 48. (*See also*, Section 315 of the Restatement Second of Torts [absent a special relationship, an actor is under no duty to control the conduct of third parties].)"

[4] "It is the opinion of this tribunal that it is unreasonable in modern times to allow an owner of remotely located real property to evade liability for a fire fueled by nuisance-level waste and debris towards a neighboring property, simply because such owner has intentionally failed or refused during his/her significant ownership period, to inform himself/herself as to the on-going and open conditions of extreme waste, debris, and homeless existing thereon. This is especially true where, like here, controlling ordinances governing the property expressly place upon a landowner, a duty to keep

8.

"Having fully considered both categories of the *Rowland* factors,[5] this court finds that neither the law nor facts of this case support carving out an exception to the general duty of reasonable care applicable herein. Specifically, in response to the question of whether or not it was generally foreseeable that an unchecked homeless encampment and/or nuisance-level debris and waste left on a vacant lot might pose a danger to neighboring properties, the court finds in the affirmative. As to whether in the setting of modern life a reasonably thoughtful person would foresee such conditions leading to the potential ignition and/or spread of fire from the Cao Property to the JCH Property, the court also finds in the affirmative.[6] Having so concluded, it is of marginal importance to the court that Defendant Cao claims that he was unaware of any prior fires having been started on the property. The mere fact that the circumstances of this case had not happened before does not show that such an event is one which might not reasonably have been anticipated.

"Furthermore: (1) there is no dispute that Plaintiff JCH suffered an injury that is 'certain and compensable under the law' (See, *Kesner*, *supra*, 1 Cal.5th at p. 1148), and that (2) the relevant intervening conduct here (transient-related waste and debris allowed to accumulate on the property fueling the spread of fire from the Cao Property to neighboring properties) is entirely foreseeable and does not diminish the closeness of the connection between Defendant Cao's conduct and Plaintiff JCH's injury for purpose of determining the existence of a duty of care.

---

private property free of excess waste and litter, define the failure of an owner to do so as a nuisance, and recognize that such failure may present a fire hazard. (See, e.g., Kings County Ordinances 13-1, 13-12(a), 13-12(d) and 14-31, 14-36, 14-37.)"

[5] "See, *Staats v. Vinter's Golf Club, LLC*, *supra*, 25 Cal.App.5th at p. 836-837."

[6] "The maxim that an actor is entitled to assume that others will not act negligently (*Porter v. California Jockey Club, Inc*. (1995) 134 Cal.App.2d 158, 160), is valid only to the extent that the intervening conduct was not to be anticipated. The idea that homeless individuals residing on property during the coldest part of the year would not utilize fire to warm themselves and/or cook food, is nonsensical. Similarly, even the most naïve landowner would realize that excessive trash and debris strewn across real property in a manner which abuts another parcel is likely to help fuel or spread a fire to such location (no matter what the initial cause of the same)."

9.

"Likewise, the policy-related *Rowland* factors[7] do not weigh in favor of carving-out an exception to the duty of a landowner to keep his property reasonably safe and clear from nuisances. [¶]…[¶]

"On th[e] issue of damages, IT IS HEREBY FURTHER ORDERED that judgment shall be entered in favor of JCH FAMILY LIMITED PARTNERSHIP as against Defendant DERR[E]CK CAO in the amount of $30,744.68. This sum is based upon lost rent during the period of fire-caused remediation efforts … plus remediation costs of $27,932.21."

## DISCUSSION

### I. The Trial Court Properly Found that Cao Was Negligent

Preliminarily, we note that Cao's arguments are poorly developed and jumbled together in a scattershot fashion. The headings of arguments and the substance thereof are not always aligned. Various tangential arguments are interspersed with other arguments, rather than addressed under separate headings. In addition, Cao frequently quotes snippets of law from cases, without addressing the factual and legal context of the quotes and cases (the context clarifies the cited snippets are wholly inapposite). We will address Cao's principal arguments to the extent we discern them.

Cao's arguments focus on the trial court's determination that he was negligent with respect to the fire that damaged the JCH property. Cao argues that as the owner of the vacant lot, he did not owe a duty of care to JCH, the owner of an adjacent property. He contends the trial court erred in finding he owed a duty of care to JCH, whereby the court's ultimate finding that he was negligent with respect to the fire that damaged the JCH property was, in turn, erroneous. We reject these contentions.

### A. Applicable Legal Framework as to "Duty" Element of Negligence

As the trial court noted, the elements of a negligence claim are " 'a legal duty of care, breach of that duty, and proximate cause resulting in injury.' " (*Staats v. Vintner's Golf Club, LLC*, *supra*, 25 Cal.App.5th at p. 831 (*Staats*); *Kesner v. Superior Court*

---

[7] "Moral blame, preventing future harm, burden, and availability of insurance. (See, *Staats v. Vintner's Golf Club, LLC*, *supra*, 25 Cal.App.5th at p. 836.)"

10.

(2016) 1 Cal.5th 1132, 1142 (*Kesner*) ["A plaintiff in any negligence suit must demonstrate ' "a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury." ' "].)  Unlike the elements of breach, causation, and injury, all of which are fact-specific issues for the trier of fact, the existence of a duty is a question of law.  (*Staats*, *supra*, at p. 831; *Kesner*, *supra*, at p. 1142 [" 'Duty is a question of law for the court, to be reviewed de novo on appeal.' "].)

" 'California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1142.)  Under Civil Code section 1714, " '[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.' " (*Staats*, *supra*, 25 Cal.App.5th at pp. 832-833, quoting Civ. Code, § 1714, subd. (a).)  In short, " 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances.' "[8] (*Cabral v. Ralph's Grocery Co.* (2011) 51 Cal.4th 764, 771 (*Cabral*).)

"As a consequence of [the] general duty [emanating from Civil Code section 1714], those who own or occupy property have a duty to maintain their premises in a reasonably safe condition." (*Staats*, *supra*, 25 Cal.App.5th at p. 833, fn. omitted.)  "To comply with this duty, a person who controls property must ' " ' "inspect [the premises]

---

[8] " ' "Courts … invoke[] the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act.' " ' " (*Kesner*, *supra*, 1 Cal.5th at p. 1143.)  "The conclusion that a defendant did not have a duty constitutes a determination by the court that public policy concerns outweigh, for a particular category of cases, the broad principle enacted by the Legislature that one's failure to exercise ordinary care incurs liability for the harms that result." (*Ibid.*)

11.

or take other proper means to ascertain their condition" ' " ' and, if a dangerous condition exists that would have been discovered by the exercise of reasonable care, has a duty to give adequate warning of or remedy it." (*Ibid*. [" ' " '[d]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of *reasonable conduct* in … light of the apparent risk" ' "], italics added.)

In *Rowland v. Christian* (1968) 69 Cal.2d 108, our Supreme Court "identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Cabral*, *supra*, 51 Cal.4th at p. 771, quoting *Rowland*, *supra*, at p. 113; see *Staats*, *supra*, 25 Cal.App.5th at p. 837 [" '*Rowland* factors fall into two categories. Three factors—foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury, while the other four—moral blame, preventing future harm, burden, and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief.' "].) "[H]owever, in the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where 'clearly supported by public policy.' " (*Cabral*, *supra*, at p. 771.)

The *Rowland* factors are evaluated at a relatively broad level of generality. (*Cabral*, *supra*, 51 Cal.4th at p. 772.) Reasonable foreseeability of harm supports the existence of a duty of care. (*Staats*, *supra*, 25 Cal.App.5th at p. 838.) However, as to

12.

foreseeability, the court's task in determining duty, " 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced [so] that liability may appropriately be imposed.' " (*Cabral*, *supra*, at p. 772; *Kesner*, *supra*, 1 Cal.5th at pp. 1143-1144 [" '[i]n applying the *… Rowland* factors, … we have asked not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from the general duty rule is justified' "].)[9]

"When determining whether a particular category of harm is reasonably foreseeable, ' "it is well to remember that 'foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' [Citation.] One may be held accountable for creating even ' "the risk of a slight possibility of injury if a reasonably prudent [person] would not do so." ' " ' " (*Staats*, *supra*, 25 Cal.App.5th at p. 838). On the other hand, "[b]ecause the consequences of a negligent act must be limited to avoid an intolerable burden on society [citation], the determination of duty 'recognizes that policy considerations may dictate [that] a cause of action should not be sanctioned no matter how foreseeable the risk.' " (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 552.)

---

[9] *Kesner* explains, " 'No-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1144.) " 'By making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a categorical no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff *no duty* of ordinary care, which is for the *court* to make, and a determination that the defendant *did not breach* the duty of ordinary care, which in a jury trial is for the *jury* to make.' "

### B. *Cao Owed Duty of Care to JCH*

The JCH property was situated immediately adjacent to Cao's empty lot. As noted above, Melkonian testified, "There is a fence in between the 319-and-a-half [property] and the vacant lot and they're within, I mean, they are right on top of each other." Moreover, as described by witnesses at trial and reflected in photographs admitted into evidence, transients were living on the Cao lot in tents and large accumulations of trash and junk were piled up on the lot. Melkonian testified that there were "tents connected to the fence that bordered the property," separating the Cao lot from the JCH property. These conditions were occurring in the open, in plain sight, and continued during the cold, winter months. Moreover, Cao had owned the lot for over a year.

JCH asserts that Cao had a duty to protect JCH's property from the risk of fire arising from significant accumulations of junk, debris, and trash created by transients living on Cao's vacant lot. JCH suggests these accumulations amounted to an obvious fire hazard, particularly in light of the transients' presence on the lot, and Cao should reasonably have inspected the premises, cleared out the junk, and secured the property. As the trial court noted, it is clear that a reasonably thoughtful and prudent property owner would readily perceive that large accumulations of junk and debris on a vacant lot with a homeless encampment present a fire hazard, in that these conditions could reasonably lead to the ignition of a fire and/or fuel the spread of any fire, including to neighboring residences, especially in the winter months. In light of the readily apparent and foreseeable risk of fire-related injury to neighbors, among others, under such conditions, a reasonable property owner would take the requisite steps to clean up and secure the property.

The *Rowland* foreseeability factors easily militate in favor of application of the general duty of care in such a situation. Similarly, the policy-related *Rowland* factors also militate in favor of application of the general duty of care in such a situation. We agree with the trial court that the *Rowland* factors do not "support carving out an

14.

exception to the general duty of reasonable care applicable herein." We conclude, as did the trial court, that Cao owed a duty of ordinary care to JCH's neighboring property with respect to risks emanating from obvious fire hazards on his vacant lot that was inhabited by transients.

In addition to ruling that Cao owed JCH a duty of care, the trial court determined that JCH had proved the remaining elements of negligence, that is, breach of the duty of care and a causal connection between the breach and JCH's injury. The court noted that the junk accumulated on the lot inhabited by transients could reasonably lead to the ignition of a fire and/or the spread of any fire ignited by activities on the lot. Under these circumstances, Cao breached the duty of care by failing to remove promptly the large accumulations of garbage, tents, and other debris from his vacant lot and securing the lot. The trial court further found that, as a result of Cao's conduct, when a fire ignited on the Cao lot on February 19, 2020, the debris accumulated thereon fueled its spread to the JCH property, which consequently sustained significant fire damage. The trial court's factual determinations are supported by substantial evidence. Cao was therefore properly found to have been negligent with respect to the fire damage to the JCH property.

### C. Cao's Contention He Did Not Owe a Duty to JCH Because the Harm was Caused by Third Parties is Meritless Under the Applicable Circumstances

Cao makes a rambling argument to the effect he did not owe a duty of care to JCH because the harm suffered by JCH was caused by third parties, that is, the transients living on the Cao lot. Cao makes various points with regard to this overarching argument. He argues he was entitled to assume others will not act negligently. He also argues he should not be held liable for the criminal acts of others. Finally, he argues that, absent a special relationship with plaintiff, he did not have a duty to control the actions of third parties. We reject these contentions.

" 'It is well established … that one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an

15.

unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person.' " (*Kesner, supra*, 1 Cal.5th at p. 1148.) "In determining whether one has a duty to prevent injury that is the result of third party conduct, the touchstone of the analysis is the foreseeability of the intervening conduct." (*Ibid*.) Here, it was eminently foreseeable that an unsecured and unmonitored vacant lot could reasonably attract transients who would accumulate detritus on the lot, thereby creating a fire hazard and an unreasonable risk of fire-related harm to neighboring properties. At a minimum, it was foreseeable that accumulations of detritus on a lot serving as a homeless encampment presented a fire hazard to neighboring properties.

As we discussed above, a reasonable property owner would have inspected the vacant lot, apprehended the risk presented by the conditions on it, promptly cleared the homeless encampment, removed the accumulated debris, and secured the lot. Furthermore, as reflected in the trial evidence, the conditions on the lot violated Kings County ordinances prohibiting accumulations of waste and litter on private property. To the extent Cao argues he was not liable for the criminal acts (i.e., trespassing) of third parties, that argument is misplaced because, for purposes of evaluating the question of the existence of a duty of care, we consider what a reasonably prudent property owner would have done in the circumstances. Under the applicable circumstances and controlling California Supreme Court authority, Cao's argument that he did not owe a duty of care to JCH because the harm at issue was caused by third parties is meritless. (See *Kesner, supra*, 1 Cal.5th at p. 1148.)

Cao's arguments with regard to third party conduct are also precluded by *Weirum v. RKO General, Inc*. (1975) 15 Cal.3d 40 (*Weirum*). *Weirum* described the issue before the *Weirum* court as follows: "A rock radio station with an extensive teenage audience conducted a contest which rewarded the first contestant to locate a peripatetic disc jockey. Two minors driving in separate automobiles attempted to follow the disc

16.

jockey's automobile to its next stop. In the course of their pursuit, one of the minors negligently forced a car off the highway, killing its sole occupant. In a suit filed by the surviving wife and children of the decedent, the jury rendered a verdict against the radio station. We now must determine whether the station owed decedent a duty of due care."[10] (*Weirum*, *supra*, at p. 43.)

The defendant in *Weirum* first argued that "the harm to [the] decedent was inflicted by third parties acting negligently," and it was "entitled to assume that others will not act negligently." (*Weirum*, *supra*, 15 Cal.3d at p. 43.) The court brushed that argument away, noting, "This concept is valid, however, only to the extent the intervening conduct was not to be anticipated." (*Ibid*.) *Weirum* further clarified: "If the likelihood that a third person may react in a particular manner is a hazard which makes the actor negligent, such reaction whether innocent or negligent does not prevent the actor from being liable for the harm caused thereby." (*Ibid*.) Cao's argument that he was entitled to assume that others will not act negligently is foreclosed by *Weirum*. Cao permitted a homeless encampment to exist unchecked on his vacant lot. Over time, garbage and junk accumulated on the lot as a result of the activities taking place on the lot, creating a hazard. There was nothing unanticipated about this situation.

The *Weirum* defendant next cited a general principle (based on section 315 of the Restatement Second of Torts) that "absent a special relationship, an actor is under no duty to control the conduct of third parties." (*Weirum*, *supra*, 15 Cal.3d at p. 48.) *Weirum* explained that this general principle applies in the context of nonfeasance. Specifically, *Weirum* noted: "This doctrine is rooted in the common law distinction

---

[10] *Weirum* noted, with respect to the question of the existence of a duty of care: "It is true, of course, that virtually every act involves some conceivable danger. Liability is imposed only if the risk of harm resulting from the act is deemed unreasonable—i.e., if the gravity and likelihood of the danger outweigh the utility of the conduct involved." (*Weirum*, *supra*, 15 Cal.3d at p. 47.)

between action and inaction, or misfeasance and nonfeasance. Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention." (*Id.* at p. 49.) When there is a special relationship between the parties, liability attaches even for nonfeasance as it relates to the failure to protect the plaintiff from third party conduct. (*Ibid.*) "If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care," with foreseeability being the most important factor. (*Ibid.*)

The situation in the instant matter, as the trial court pointed out, is characterized by Cao's misfeasance. In other words, liability here is predicated on Cao's facilitation of an unreasonable risk of harm to JCH, not on Cao's failure to intervene based on a special relationship, for JCH's benefit. Accordingly, the standards of ordinary care apply here and Cao cannot evade liability for the foreseeable acts of third parties.

### D. Celli v. Sports Car Club, Inc. *is Inapposite*

Cao makes an additional argument with respect to his overarching claim that he cannot be held liable for the conduct of third parties. Specifically, Cao argues the trial court erred by refusing to apply the following principle enunciated in *Celli v. Sports Car Club, Inc.* (1972) 29 Cal.App.3d 511 (*Celli*): "[E]very person has a right to presume that every other person will perform his duty and obey the law and in the absence of reasonable ground[s] to think otherwise, it is not negligence to assume that he is not exposed to danger which could come to him only from violation of law or duty by such other person." (*Id.* at p. 523.) Although the trial court addressed this quote from *Celli* in detail in its ruling, Cao does not mention the trial court's treatment of *Celli*. Indeed, other than referencing the above-noted quote from *Celli*, Cao does not further develop his argument.

The trial court distinguished *Celli* from the instant case on the basis that *Celli*, unlike the instant matter, was an "assumption of [the] risk" case. The plaintiffs in *Celli*

18.

were patrons at a racecourse who were injured when a racecar spun out of control. The *Celli* defendants requested jury instructions on contributory negligence on the part of the plaintiffs that were refused by the trial court. The *Celli* defendants argued on appeal that the trial court's refusal to instruct the jury on contributory negligence was erroneous. The *Celli* court stated: "This contention, however, overlooks the fact that [the] plaintiffs were invitees and were injured while lawfully standing in the precise area designated by their pit passes, a form of admission ticket made available to the members of the public. A patron of a recreation facility open to the paying public is not obliged to make a critical examination of the area he is about to use in order to determine whether or not it is safe. On the contrary, he has the right to assume that those in charge have exercised due care in the matter of inspection and have taken the proper precautions for the safety of their patrons …. Thus, *each of the plaintiffs* was entitled to rely on the assumption that defendants would exercise reasonable care for his safety." (*Celli*, *supra*, 29 Cal.App.3d at p. 523, italics added.)

Cao cites language from *Celli* to the effect that "every person has a right to presume that every other person will perform his duty and obey the law," but fails to mention that *Celli* used that language with reference to the plaintiffs, not the defendants, in the context of assumption of the risk. *Celli* dealt with a specific scenario where the plaintiffs were invitees at a racecourse who were standing in "the precise area designated by their pit passes," when they were injured by a racecar that went out of control. (*Celli*, *supra*, 29 Cal.App.3d at p. 523.) The situation in *Celli* bears no resemblance to the situation presented in the instant matter, where the question is whether Cao, the defendant, owed a duty of care, and, more importantly, the risk at issue was entirely foreseeable.

Cao made this same argument, citing the identical language from *Celli*, in the trial court. The trial court rejected the argument, in part, as follows:

19.

"Defendant's reliance upon *Celli v. Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 523 is misplaced … [¶ ] … The actual language cited by Defendant comes from *Harris v. Johnson* (1916) 174 Cal. 55, 59. In that case, the Supreme Court found that the person relying upon such [a] theory must 'himself use reasonable care to observe the conduct of the other person so far as such conduct may affect his own safety at the time.' (*Id.* at p. 59.) Here, there was *no evidence* that Defendant Cao took <u>any action</u> to remediate or address the homeless encampment and/or significant trash/debris condition on his property. There was no evidence that Plaintiff acted in *any way* contributing to the negligent and/or willful acts of either Defendant Cao and/or those homeless individuals allowed to remain on the Cao Property without remediation. Also, unlike in *Harris*, Defendant Cao was notified (via letter or ordinance) that such conditions existed on his property and/or created a fire-related danger. Accordingly, in this case Defendant Cao had *absolutely no basis* for assuming that the homeless [individuals who] resided on his property would not light fires during colder temperature months and/or that the significant trash and debris existing on the property would not contribute to the spread of a fire to neighboring properties regardless of the cause of ignition."

As aptly explained by the trial court, Cao's position is not analogous to that of the plaintiffs in *Celli*. The language from *Celli* that Cao relies on—"every person has a right to presume that every other person will perform his duty and obey the law."—does not help him. (*Celli*, *supra*, 29 Cal.App.3d at p. 523.)

### E. Doe v. Los Angeles Department of Children and Family Services *is Inapposite*

Cao next argues, based on a case where the question of duty turned on the special relationship between the parties, that a duty to protect JCH from an unreasonable risk of fire-related harm would exist only to the extent Cao had *actual notice* of the hazardous conditions on his vacant lot. Cao bases his argument on *Doe v. Los Angeles Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 682-683 (*Doe v. DCFS*), which he repeatedly cites in his brief. *Doe v. DCFS* is, however, inapplicable here.

*Doe v. DCFS* is a "special relationship" case, in which the question of duty implicated the defendant's failure to intervene to prevent harm to the plaintiff from third parties. The plaintiff in that case was a woman who was placed with a foster parent when

she was a minor. The foster parent's sons sexually abused the plaintiff while she was in the care of the foster parent. The plaintiff subsequently sued the foster care agency that placed her with that foster parent, on grounds of negligence, among other claims. Plaintiff contended the agency, which had a special relationship with her and was responsible for protecting her from harm from others, negligently failed to properly screen the foster home and did not adequately monitor her when she lived there. (*Doe v. DCFS, supra,* 37 Cal.App.5th at pp. 679-680, 682.) The court held that, notwithstanding the agency's special relationship with the plaintiff, the agency did not have a duty to protect her from the sexual abuse because the agency did not know that the plaintiff had contact with the sons (who were adults when they abused the plaintiff) or that they had a propensity for sexual abuse. (*Id*. at p. 686.)

While discussing the question of the foster care agency's duty of care or lack thereof, *Doe v. DCFS* acknowledged that when a special relationship exists between a plaintiff and a defendant, the defendant owes to the plaintiff a legal duty to protect against third party conduct. (*Doe v. DCFS, supra,* 37 Cal.App.5th at p. 682.) However, *Doe v. DCFS* went on to say: " '[I]n addition to the special relationship …, there must also be evidence showing facts from which the trier of fact could reasonably infer that the [defendant] had prior *actual knowledge*, and thus *must have known*, of the offender's assaultive propensities.' " (*Id.* at p. 682.)

This passage in *Doe v. DCFS* is a quote from *Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1084 (*Romero*), but *Romero* crafted this specific foreseeability rule to apply in special circumstances that are not present in the instant case. Accordingly, Cao's reliance on *Doe v. DCFS* and *Romero* for the proposition that he did not owe a duty of care to JCH absent *actual knowledge* of the conditions on his lot, is misplaced not only because these cases are "special relationship" cases, but also because of the unique facts of *Romero*.

"[I]in the passage cited by the court in *Doe v. DCFS*, the court in *Romero* was analyzing the scope of the duty created by the special relationship in that case, namely, the relationship between adults and the minors they host in their homes (such as friends of their children)." (*Doe v. Lawndale Elementary School District* (2021) 72 Cal.App.5th 113, 128 (*Lawndale*). "In *Romero* a 16-year-old boy sexually assaulted a 13-year-old girl while they were both visiting the home of another teenager. [Citation.] The girl sued the host parents, contending they failed to protect her from sexual abuse." (*Ibid.*)

"After concluding the host parents had a special relationship with the girl, the court in *Romero* held 'sound public policy requires that where one invitee minor sexually assaults another in the defendant's home, the question of whether the defendant owed a duty of reasonable care to the injured minor depends on whether the assailant minor's conduct was reasonably foreseeable, but that conduct will be deemed to have been reasonably foreseeable only if the defendant had *actual knowledge* of the assaultive propensities of the teenage assailant.' " (*Lawndale*, *supra*, 72 Cal.App.5th at pp. 128-129.) "The court in *Romero* stated that to hold otherwise would 'impose unwarranted burdens and an unjustifiable risk of tort liability on families with teenage children' so that '[p]arents [thinking of hosting] a teenager that they or their own children may wish to invite into the home … would be required to conduct an investigation in order to protect themselves against potential liability' and 'would be hampered in their investigative efforts by legitimate and well-established rules of confidentiality regarding juvenile matters.' " (*Lawndale*, *supra*, 72 Cal.App.5th at p. 129.)

Courts have clarified: "To the extent that *Doe v. DCFS* suggests that, in all cases where a defendant has a special relationship with a plaintiff, the defendant has a duty to protect the plaintiff from third party assaults or abuse only if the defendant has actual knowledge of the third party's propensity for assault or abuse, California law does not support such a proposition." (*Lawndale*, *supra*, 72 Cal.App.5th at p. 129 [the public policy reasons surrounding the *Romero* rule do not exist in other contexts that are

distinguishable from the scenario at issue in *Romero*].) The instant matter is not only *not* a "special relationship" case, but its facts also bear *no* resemblance to the facts of *Doe v. DCSF* or *Romero*. Accordingly, here the question of duty is governed by the standards of ordinary care and the *Romero* rule is wholly inapposite. Cao's reliance on *Doe v. DCSF* is, in turn, entirely unavailing.

In addition to his argument about actual notice, Cao contends that he "did not owe [a] duty to the Respondent as there was no constructive notice about waste or trespass occurring on his vacant property." He posits, "[t]he Trial Court erred as a matter of law by improperly implying [c]onstructive notice of the illegal acts such as trespass and accumulating waste on the property." However, Cao does not explain what he means by the term "constructive notice" and does not provide any authority on the point, whereby he has waived the argument. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

In any event, as noted by the trial court, a reasonable property owner with control over the unsecured lot for over a year would have made some effort to ascertain its condition. Stated differently, an ordinary, prudent property owner reasonably should have known about the conditions on the lot. Therefore, constructive notice was properly found to exist here. Furthermore, Kings County sent notices of violation to Cao, and Cao's mother acknowledged Cao asked her to help him with the violations documented in the notices (the trial court found Cao received the notices, deeming any claims of non-receipt "to be lacking in credibility").[11] In sum, Cao's contentions to the effect that he

---

[11] The trial court's finding that Cao received the notices of violations sent by Kings County is supported by substantial evidence and we affirm it.

did not owe a duty to JCH because he was unaware of the hazardous conditions on his lot are unavailing.

### F. *Evidence of Prior Fire-Related Incidents or Prior Criminal Activity Was Not Required for Duty to Exist*

Cao also argues he cannot be held to owe a duty to JCH in the absence of evidence of prior fire-related incidents or prior criminal activity on the lot. *Staats* defeats this argument. In *Staats*, a patron of a golf club was attacked, on the golf course, by a swarm of yellow jackets that were later traced to a nest on the premises. *Staats* explained:

> "Contrary to the Club's position, a danger does not have to 'previously manifest' to be foreseeable. ' " '[T]he mere fact that a particular kind of accident has not happened before does not … show that such accident is one which might not reasonably have been anticipated.' [Citation.] Thus, the fortuitous absence of prior injury does not justify relieving [a] defendant from responsibility for the foreseeable consequences of its acts." ' [Citation.] In any event, because we must assess whether the presence of nests on a golf course creates a general risk of foreseeable injury –i.e., the possibility that yellow jackets will swarm and attack a golfer—we find it of marginal importance that the Club claims it was unaware of any previous swarm or sting." (*Staats*, *supra*, 25 Cal.App.5th at pp. 838-839.)

*Staats* forecloses Cao's argument that he had no duty in the absence of prior, similar incidents on the lot.

### G. *Violation of Health & Safety Code Section 13007, Based on Negligence, Was Properly Established*

Section 13007 of the Health and Safety Code provides: "Any person who personally or *through another* willfully, *negligently*, or in violation of law, sets fire to, allows fire to be set to, or *allows a fire kindled or attended by him to escape to*, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire." (Italics added.)

With respect to JCH's cause of action alleging violation of Health and Safety Code section 13007, Cao argues there has to be a causal connection between actions of

24.

the defendant and the harm suffered by the plaintiff. Cao argues evidence of such a connection was lacking here. He contends: "The Trial Court did not take into consideration that there was no evidence whatsoever to support the contention that Appellant brought waste to his property or allowed it to be brought there. There was no evidence whatsoever that Appellant brought homeless people to his property or [affirmatively] allowed them to stay there." Cao argues that "[g]iven the complete lack of evidence" to this effect, there was no causal connection between his conduct and the fire damage to the JCH property.

Cao is wrong. The trial court made factual determinations to the effect that Cao breached the duty of ordinary care (i.e., he did not act reasonably under the circumstances), thereby creating "an unreasonable risk of harm to both his own property and that of his neighbors," and the breach led to the fire-damage to the JCH property. More specifically, the court found that Cao did not remove the accumulations of junk and garbage on the vacant lot, which accumulations then fueled the spread of the fire from his lot to the JCH property. Thus, there was a causal connection between Cao's breach and the damage to the JCH property.

### H.     JCH Was Not Obligated to Inform Police of Conditions on Cao's Lot

Cao complains: "The Trial Court failed to consider that the condition on Appellant's property was well-known to Respondent for at least half a year prior to the fire but it never complained to the police or other authorities about this obvious condition … when police could have removed homeless people from Appellant's lot, thus avoiding the fire that happened in the homeless camp." However, Cao does not develop his argument or cite any relevant authorities to support it; nor do we see any merit in it. Accordingly, we reject it as waived and, in any event, meritless.

### I.     Cao Had Adequate Time to Cure the Hazardous Conditions on the Lot

Cao argues he did not have enough time to cure any hazardous conditions on his lot because he recorded the grant deed under which he took title on January 2, 2020. This

argument is not well taken.  The grant deed in question shows that title was transferred to Cao on February 4, 2019, which is the date he took ownership of the lot.  He therefore had owned and controlled the lot for over a year before the fire that damaged the JCH property broke out.  As discussed above, a reasonable property owner would have inspected and attended to the property over the course of a full year.  Cao's contentions have no merit.

### J.        *Miscellaneous Arguments*

Cao makes additional, tangential claims interspersed with other arguments.  These claims are not supported by reasoned argument, citations to the record, and citations to applicable legal authorities.  Accordingly, we will not consider them.  (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd*. (2002) 100 Cal.App.4th 1066, 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.  The court is not required to make an independent, unassisted study of the record in search of error.  The point is treated as waived and we pass it without further consideration."].)

## DISPOSITION

The judgment is affirmed.  JCH is awarded its costs on appeal.